[No. 41926. Department One. September 16, 1971.]

THE STATE OF WASHINGTON, *Respondent*, v. PATRICK HENRY GREGORY, *Appellant*.

*Monheimer, Schermer, Van Fredenberg & Smith,* by *Richard W. Pierson* and *Stephen P. Ryder,* for appellant.

*Christopher T. Bayley, Prosecuting Attorney,* and *Douglas S. Dunham, Deputy,* for respondent.

FINLEY, J.—Appellant Gregory was charged and convicted of the second-degree murder of a Seattle taxicab driver during the course of a vicious gunfight or "shoot out" between the two men. He is appealing conviction by the jury on several grounds.

Appellant and the decedent taxicab driver were the only witnesses to the actual battle. At trial, evidence relating to a reconstruction of the fatal event, therefore, consisted solely of appellant's testimony and certain ballistics evidence introduced by respondent state.

The record reveals the following facts: appellant was a member of the armed forces stationed at Fort Lewis, Washington. For a period of time preceding the fatal shooting, he had been residing with his uncle in Seattle. On the evening of October 1, 1969, some time after 10 p.m., Gregory engaged the transportation services of the decedent. Approximately 1 hour later, the decedent was found—some 90 feet from his parked taxicab—fatally wounded. He was the victim of five gunshot wounds—the last four of which were subsequently determined to have been fatal. Later the same evening, the appellant was admitted to a Seattle hospital, suffering himself from six gunshot wounds. It was later determined that appellant's wounds could have been fatal except for defective ammunition fired by the deceased resulting in only superficial wounds to appellant.

It was undisputed at trial that decedent's fatal wounds were caused by appellant's gun, and that appellant's wounds were inflicted by the decedent's gun. At trial, appellant and respondent advanced widely conflicting explanations as to the motivation for, and the sequence of events immediately surrounding, the fatal shooting.

Appellant Gregory testified that his shots had been fired in self-defense, necessitated by the aggression of the deceased taxicab driver. Gregory explained that—on the evening in question—he was armed with his uncle's .22

caliber revolver because he had been robbed some weeks earlier in the vicinity of his uncle's residence.

Gregory further testified that, after entering the decedent's taxicab, the two engaged in a discussion which became more and more heated. Appellant claims that he then requested to be discharged from the cab, whereupon appellant and decedent engaged in a futher dispute over the amount of the fare. Thereafter, appellant alleges the decedent taxicab driver pulled a gun and shot appellant—first in the back as appellant attempted to escape, and then in the groin as appellant turned. At this point, appellant asserts, he pulled his own weapon and the parties continued to exchange a barrage of successive shots from standing and crouching positions until each turned and ran.

Contrariwise, respondent state contended at trial that appellant Gregory had been the aggressor. In this regard, respondent presented critical ballistics evidence which, if believed by the jury, established that appellant was, indeed, the aggressor; *i.e.*, having fired the first shot and at close range. Respondent also contended that appellant's wounds were inflicted by the decedent taxicab driver as the appellant attempted to flee. Respondent's theory was, again, supported by ballistics evidence showing both the angle of the shots and the existence of powder burns on decedent's clothing and the absence of powder burns on appellant's clothing.

Events subsequent to the fatal shooting form the basis of appellant's initial assignment of error. After all shots had been exchanged, appellant fled from the scene and returned to his uncle's residence. Appellant contends that, while at the residence, his uncle suggested appellant relate a *fabricated explanation* regarding the cause of his wounds, until such time as appellant had consulted an attorney. Appellant asserts his uncle advised him to tell anyone who might ask, that he had been "shot by some white men in a passing car who engaged him in a race argument."

Thereafter—in the early morning hours of October 2— appellant was transported to a Seattle hospital. Officers

Graham and Ruedebusch of the Seattle Police Department observed appellant's arrival. Both officers were at the hospital as the result of an unrelated matter. Officer Graham went to appellant's assistance and inquired into the cause of his injuries. Appellant responded by stating that he had been approached on a Seattle street by several white men who commenced a racial argument and then shot the appellant.

■ Appellant Gregory assigns error to the admission of his exculpatory statement made to Officer Graham. Appellant contends that, at the time said statement was made, he did not possess sufficient mental capacity to enable him to make a free and rational choice as to whether or not to speak to the officer.

During the course of a pretrial, CrR 101.20W, hearing, the trial court ruled against the appellant, and subsequently allowed the admission of Officer Graham's testimony regarding appellant's exculpatory statements. We find no error in the trial court's ruling. Testimony regarding his condition at the time of appellant's statement was conflicting. On the one hand, appellant's uncle testified that appellant had been unable to walk to the automobile without aid. Contrariwise, Officer Graham stated that appellant had appeared coherent, and that appellant desired to walk unassisted into the hospital.

The above-described facts clearly establish that Officer Graham's casual and happenstance "interrogation" of the appellant was noncustodial. As such, the admissibility of appellant's statement is governed by

> whether the noncustodial interrogation of the defendant, which elicited incriminatory admissions by him, was of such a nature as was likely to exert such pressure upon the individual as to disable him from making a free and rational choice whether to speak with the police officer.

*State v. Kelter*, 71 Wn.2d 52, 55, 426 P.2d 500 (1967).

Appellant asserts that medical testimony presented at the hearing established his condition, upon admission to the hospital, to be one of "psychological and muscular col-

lapse." However, an examination of the record does not indicate the length of time between Officer Graham's observation of appellant's condition and the subsequent medical observations. The fact that the trial court excluded a second statement—made by appellant some 20 minutes later to another officer—indicates (1) that the trial court was convinced appellant's condition had deteriorated *subsequent to* his statement to Officer Graham, and (2) further supports the trial court's determination that appellant's earlier statement was the result of "free and rational choice."

In light of the disputed evidence presented, we must conclude the trial court correctly determined that appellant's statement to Officer Graham was the result of free and rational choice.

Appellant's next assignment of error relates to his questioning by Officers Strunk and Cameron of the Seattle Police Department on the afternoon of October 3. The events surrounding this questioning must be described at some length. Upon arriving at the hospital, the officers checked with hospital personnel and were mistakenly informed that, since appellant was not then under sedation, it was permissible to conduct an interview with him. In fact, appellant had received the following dosages of medicine on October 3:

| 12 midnight | 50 mgs. | Demerol |
| 5:40 a.m. | 50 mgs. | Demerol |
| 10 a.m. | 30 mgs. | Codeine |
| 12 noon | 30 mgs. | Codeine |
| 1 p.m. | 50 mgs. | Demerol |

Appellant was awakened at approximately 1:45 p.m. He was then advised of his constitutional rights, but did not sign the customary waiver form, stating that the cast on his left hand prevented him from doing so since he was left-handed. Appellant readily answered several of the detectives' questions—*including a recitation of the "fabricated" story* regarding the cause of his wounds. When the two officers confronted appellant with the fact that ballistics

·tests ·had shown the decedent was killed with appellant's gun, appellant then refused to answer further questions.

 Appellant contends that the trial court erred in admitting the officers' testimony regarding statements made to them by appellant. He argues that, at the time such statements were made, he was under the influence of one or both of the drugs; *i.e.*, his ability to make a rational choice was affected by the drugs. Where such an allegation is raised, the standard of admissibility is whether the defendant's statements were the product of a rational intellect and free will. *See Townsend v. Sain*, 372 U.S. 293, 9 L. Ed. 2d 770, 83 S. Ct. 745 (1963).

Upon careful examination of the cases cited by appellant, we are convinced that the admissibility of statements made by a defendant—who has previously been administered such narcotic drugs—must, necessarily depend upon the unique facts of the case. *See Jackson v. Denno*, 378 U.S. 368, 12 L. Ed. 2d 908, 84 S. Ct. 1774, 1 A.L.R.3d 1205 (1964); *Griffith v. Rhay*, 282 F.2d 711 (1960); *Reddish v. State*, 167 So. 2d 858 (Fla. 1964).

We believe there is substantial evidence to support the trial court's finding that appellant's statements to the officers were *not* made at a time when appellant's rationality was hindered, diminished or in any manner affected by the above-mentioned drugs.

Medical testimony as to the hypothetical effects of the drugs was equivocal. Testimony of the actual participants in the interview was clear. The officers stated that, while appellant appeared somewhat drowsy on first awakening, he freely and unhesitatingly answered questions. Only when the appellant was confronted with the accusation that he was lying, did he refuse to answer further questions. The latter defensive action on the part of the appellant supports the view that he was in full possession of his mental facilities during the questioning.

Appellant's own testimony regarding these events is also significant. Appellant stated that he had been informed of his rights by the officers, that he had not been threatened,

and that no promises had been made to him. He further testified that he decided not to answer any more questions when his rights suddenly "dawned on [him]." Yet, the appellant had previously told the officers that he understood his rights, and had advanced a rational explanation, *i.e.*, that his arm was in a cast, for refusing to sign the waiver form.

As the evidence was conflicting, it was not error for the trial court to disbelieve appellant, to believe the officers' version of the interview, and to rule that appellant's waiver —and his decision to talk with the officers—was made voluntarily, knowingly, and intelligently and that his statements were the product of a rational intellect and free will.

Beyond this, it may be noted that appellant's statements to these officers were merely a *reiteration of his "fabricated" story* regarding the cause of his wounds—the same story which appellant had previously related to Officer Graham. Thus, even were we to conclude that appellant's will had been affected by the drugs, his statements to Officers Strunk and Cameron were merely cumulative and, therefore, harmless error.

■ Appellant next asserts that the trial court erred in admitting into evidence statements made by him to his attending physician. The statements consisted of the same "fabricated" story which appellant had related on several prior occasions. Appellant urges that admission of the statements constituted a violation of the doctor-patient privilege. *See* RCW 5.60.060(4) and RCW 10.52.020.

We do not agree. By calling the physician as his own witness, appellant waived his doctor-patient privilege. *See Randa v. Bear*, 50 Wn.2d 415, 312 P.2d 640 (1957); 8 Wigmore on Evidence, § 2390 (McNaughton rev. 1940.)

Next, appellant alleges that instruction No. 19, given by the trial court, failed to inform the jury that it should disregard statements made by appellant if it found such statements were not the product of a free and rational intellect. We find no merit in appellant's contention. Initially, it is noted that appellant did not except on this

ground. Beyond this, however, there is no substance to appellant's argument. CrR 101.20W(d) provides, in part, that the jury shall "be instructed that they may give such weight and credibility to the confession, in view of the surrounding circumstances, as they see fit." Such language is contained, almost verbatim, in instruction No. 19.

■ Appellant additionally assigns error to the trial court's giving of instruction No. 9. That instruction informed the jury that, if it found appellant had been armed with a pistol and had no license to carry it, such facts were prima facie evidence of appellant's intention to commit the crime of violence charged.

Initially, the appellant argues that this instruction should be given only in cases involving clear evidence of premeditation. Prior decisions of this court do not mandate such an interpretation. *See State v. Thomas,* 63 Wn.2d 59, 385 P.2d 532 (1963); *State v. Thomas,* 58 Wn.2d 746, 364 P.2d 930 (1961). *See also* RCW 9.41.030. *Cf. State v. Person,* 56 Wn.2d 283, 352 P.2d 189, 81 A.L.R. 1088 (1960).

Additionally, appellant argues that instruction No. 9 is defective because it fails to contain a definition of the term "prima facie." We do not agree. That instruction provided, in relevant part:

> This presumption permits, but in no way directs, you to convict the accused, and must be considered by you in light of the presumption of innocence which arises upon a plea of not guilty and accompanies the accused throughout the trial until overcome by evidence which convinces you of the accused's guilt beyond a reasonable doubt.

The wording of the instruction was clearly adequate to convey to the jury the meaning of prima facie evidence, and we find no error in the giving of this instruction.

■ Next, appellant excepts to the giving of instruction No. 17, which informed the jury, as follows:

> If you are convinced by the evidence in this case beyond a reasonable doubt that the act alleged as the crime with which the defendant is here charged was in fact committed, *and you further find that immediately or*

*soon thereafter the defendant fled from the place where such act is alleged to have been committed, then the flight of the defendant is a circumstance to be considered by the jury, together with the other evidence in the case. It is not sufficient in itself to establish the guilt of the defendant,* but its weight as evidence is a matter for the jury to determine in connection with all the other facts in the case.

(Italics ours.) We find no error in this instruction. It is supported both by the evidence in the instant case and by prior decisions of this court. *See State v. Thomas,* 63 Wn.2d 59, 385 P.2d 532 (1963); *State v. Wilson,* 26 Wn.2d 468, 174 P.2d 553 (1946); *State v. Lew,* 26 Wn.2d 394, 174 P.2d 291 (1946). *Cf. State v. Moser,* 37 Wn.2d 911, 226 P.2d 867 (1951).

Appellant further assigns error to the giving of two instructions relating to the issue of self-defense. Instruction No. 15 informed the jury, in part, that

no man can by his own lawless acts create a necessity for acting in self-defense and thereupon assault and injure or kill the person with whom he seeks the difficulty, and then interpose as a defense the plea of self-defense.

Instruction No. 14½ provided:

You are instructed that the right of self-defense must be exercised within the limits of mere defense and protection, under an apparent necessity to avert by force an unlawful and violent attack. One defending himself must not exceed the bounds of mere defense. If the defendant was justified in defending himself originally, but went further than was necessary to his defense, as the circumstances honestly and reasonably appeared to him at the time, then he is not entitled to be acquitted on the ground of self-defense.

Appellant contends that no evidence was introduced at trial which would support the giving of these two instructions. Therefore, he urges, these instructions impermissibly allowed the jury to indulge in conjecture as to whether or not the appellant (1) created the necessity for defending himself, and (2) exceeded the bounds of mere defense.

We disagree. As previously stated, ballistics evidence in-

troduced by the respondent state established both the angle of the fatal wounds and the existence of powder burns on decedent's clothing and the absence of such burns on appellant's clothing. Such evidence, if believed by the jury, clearly supported respondent's theory that appellant was, in fact, the aggressor. We have previously approved the giving of both instructions. See *State v. Wilson*, 26 Wn.2d 468, 174 P.2d 553 (1946); *State v. Turpin*, 158 Wash. 103, 290 P. 824 (1930); *State v. Hill*, 76 Wn.2d 557, 458 P.2d 171 (1969); *State v. Smith*, 196 Wash. 534, 83 P.2d 749 (1938); *State v. Brooks*, 172 Wash. 221, 19 P.2d 924 (1933).

■ Finally, appellant urges that the trial court erred in permitting the prosecutor to question him regarding prior acts of alleged misconduct. Specifically, the prosecutor, over appellant's objection, asked appellant if he was, at the time of trial, AWOL. Appellant responded in the affirmative.

Appellant contends that such question was directed to a prior, unrelated act of misconduct. He argues that the question was improper first because the alleged misconduct had not culminated in a conviction, and, additionally, because appellant had not placed his character in issue at trial.

The trial court, in allowing the question, determined that appellant had, in fact, placed his character in issue at trial. We agree. Appellant wore his military uniform throughout the trial, in addition to testifying at some length regarding his distinguished military career. Thus, the question was permissible as an attack upon appellant's character which the appellant, himself, had placed in issue.

In summary, we can find no error denying the appellant his right to a fair and impartial trial. Appellant, himself, was solely responsible for creating the ground for attack upon his credibility by recounting—on several occasions— the "fabricated" explanation of the cause of his wounds. Apart from this issue, however, the ballistics evidence introduced by the respondent was fully sufficient, in itself, if believed by the jury, to establish appellant as the aggres-

sor, and thus support appellant's conviction of murder in the second degree.

The judgment is affirmed.

HAMILTON, C.J., HUNTER, NEILL, and STAFFORD, JJ., concur.

Petition for rehearing denied November 4, 1971.