[No. 12411-8-III.   Division Three.   April 5, 1994.]

THE STATE OF WASHINGTON, *Respondent*, v. RAUL L. MIRELES, *Appellant*.

*Hugh M. Spall,* for appellant.

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *Bruce Hanify, Deputy,* for respondent.

THOMPSON, C.J. — Raul L. Mireles was convicted for possession of a controlled substance (cocaine) with intent to deliver. His sentence was ordered to run consecutively to a federal sentence previously imposed. He appeals his conviction and sentence, contending the trial court (a) erred in denying his suppression motions, (b) violated his right to a speedy trial under CrR 3.3, and (c) abused its discretion by ordering his state sentence to run consecutively to his federal sentence. We affirm.

## FACTS AND PROCEDURAL HISTORY

On July 11, 1990, employees of the Department of Social and Health Services (DSHS), Office of Support Enforcement (OSE), seized a pickup truck registered to Mr. Mireles. DSHS claimed a lien on the vehicle for unpaid child support. The truck was taken to Bill's Towing in Sunnyside where Nannette Hulse of OSE conducted an inventory search. She found a green canvas bag on the passenger floorboard. She unzipped it and saw what she believed were narcotics. She closed the bag, replaced it on the floorboard, and called police.

Sunnyside police obtained a search warrant for the vehicle and its contents. They seized United States currency and 265 grams of cocaine pursuant to the warrant.

On July 13, 1990, Mr. Mireles was charged with possession of a controlled substance, cocaine, with intent to deliver. RCW 69.50.401(a). He was arraigned on July 27, 1990, and released. While awaiting trial, he was arrested by federal authorities and taken into custody.

On September 10, 1991, the State obtained an order from the Yakima County Superior Court directing the issuance of a writ of habeas corpus ad prosequendum to the United States Marshal for the delivery of Mr. Mireles for trial in Yakima. Federal authorities agreed to release him after his trial on the federal charges.

Mr. Mireles waived his state speedy trial rights through September 16, 1991. On October 7, 1991, while still in federal custody, Mr. Mireles moved for dismissal of the state

charges based on violation of his speedy trial rights. Alternatively, he requested a trial on the state charges in absentia. His motion was denied.

Mr. Mireles was found guilty on the federal charge. He was sentenced on February 28, 1992, and released for trial by the State. On April 3, defense counsel orally moved to suppress the evidence seized from his vehicle. The trial court determined the search was a valid OSE inventory search and denied the motion.

On April 6, Mr. Mireles' bench trial commenced. During trial, defense counsel questioned the validity of the seizure of the vehicle by DSHS, as distinguished from the seizure of the canvas bag from within it. The seizure was deemed lawful and Mr. Mireles was found guilty as charged. He was sentenced to 48 months' incarceration, to be served upon completion of his federal sentence.

### SUPPRESSION MOTIONS

1. Contentions. Mr. Mireles contends the OSE search of his vehicle violated his rights under the Fourth Amendment and article 1, section 7 of the Washington Constitution. He cites *Florida v. Wells*, 495 U.S. 1, 109 L. Ed. 2d 1, 110 S. Ct. 1632 (1990); *State v. Houser*, 95 Wn.2d 143, 149, 622 P.2d 1218 (1980); *State v. Vonhof*, 51 Wn. App. 33, 37-38, 751 P.2d 1221, *review denied*, 111 Wn.2d 1010 (1988), *cert. denied*, 488 U.S. 1008 (1989); and numerous other cases.

Mr. Mireles contends that even if his privacy was not invaded by the search, liened property cannot be seized without probable cause to believe it belongs to the target of the seizure. According to Mr. Mireles, there was no probable cause to believe the bag belonged to him because it was found on the passenger side of the vehicle. He also contends the bag and its contents were not subject to a lien by DSHS because they were exempt under RCW 6.15.010.[1] Without the lien, OSE lacked possessory rights.

---

[1]RCW 6.15.010 lists types and amounts of personal property exempt from execution, attachment, and garnishment.

The State contends DSHS was entitled to seize the vehicle pursuant to RCW 74.20A. Under RCW 74.20A.030(1), the State is subrogated to a child's right to collect from his or her parent, and under RCW 74.20A.030(2), subrogation includes the right to initiate actions for the collection of moneys owed. The collection methods available to DSHS are judicial, RCW 74.20A.040, and administrative, RCW 74.20A.055. Once the obligation is perfected statutorily, as in this case, the State is in the position of a secured creditor with the same rights as other creditors to seize property. RCW 74.20A.060(1), (2).

The State contends the search which followed the lawful seizure of the vehicle was an inventory search which did not require a warrant. *South Dakota v. Opperman*, 428 U.S. 364, 49 L. Ed. 2d 1000, 96 S. Ct. 3092 (1976); *Houser ; State v. McFadden*, 63 Wn. App. 441, 820 P.2d 53 (1991), *review denied*, 119 Wn.2d 1002 (1992).

■ 2. Standard of Review. Although a trial court's findings following a suppression hearing are of great significance to a reviewing court, when constitutional rights are at issue the appellate court will make an independent evaluation of the evidence. *State v. Mennegar*, 114 Wn.2d 304, 309-10, 787 P.2d 1347 (1990).

3. Findings of Fact. Mr. Mireles assigns error to portions of finding of fact 3 entered after the first suppression hearing and portions of finding of fact 3 entered after the second suppression hearing. Both state in relevant part: "That at Bill's Towing, Nannette Hulse of the OSE began an inventory search of the Nissan Pickup." At the first suppression hearing, a videotape of the search taken by DSHS was admitted into evidence without objection. Apparently, it convinced the trial court that OSE was not looking for evidence and was surprised at its discovery. As the court observed:

> [It was] obvious from the video as soon as that bag was opened . . . they realized that they had contraband there. I mean, it was the very first thing the person indicated. . . .
>
> I think she said a swear word.

■ Greg Broyles, an employee of DSHS and a child support officer at the time of the search, testified that he participated in five or six seizures for DSHS and an inventory search was a "standard practice". He said checklists had been developed for use in such searches and everything was to be written down and its condition checked off. He identified Ms. Hulse on the videotape as the person conducting the search. He further testified during trial that the purpose of an inventory search is to document what is found in order to avoid spurious claims. The challenged findings are supported by substantial evidence.

4. <u>Conclusions of Law</u>. Mr. Mireles assigns error to conclusions of law 2 through 4 from the first suppression hearing and conclusions of law 3 and 4 from the second suppression hearing. In these conclusions, the trial court determined that DSHS employees had prior justification for their intrusion into the vehicle; a search warrant was unnecessary because the defendant no longer had a reasonable expectation of privacy; the search was reasonable; and the evidence was admissible.

■ ■ The Fourth Amendment and Const. art. 1, § 7 protect citizens from unreasonable searches by the government and its agents. *Camara v. Municipal Court*, 387 U.S. 523, 18 L. Ed. 2d 930, 87 S. Ct. 1727 (1967); *Vonhof* (direct law enforcement is not a prerequisite). Searches conducted without a warrant are per se unreasonable unless they fall within a few recognized exceptions. *State v. Bell*, 108 Wn.2d 193, 196, 737 P.2d 254 (1987); *Katz v. United States*, 389 U.S. 347, 357, 19 L. Ed. 2d 576, 88 S. Ct. 507, 514 (1967). The burden of proving an exception rests upon the State. *State v. Chrisman*, 100 Wn.2d 814, 822, 676 P.2d 419 (1984); *Katz*, at 357.

■ A routine inventory search is a recognized exception to the warrant requirement. *Opperman; United States v. Chadwick*, 433 U.S. 1, 53 L. Ed. 2d 538, 97 S. Ct. 2476 (1977); *Houser*. The exception has been recognized because, unlike a probable cause search and a search incident to arrest, the purpose of an inventory search is not to discover

evidence of a crime but to perform an administrative or caretaking function. *See Colorado v. Bertine*, 479 U.S. 367, 372, 93 L. Ed. 2d 739, 107 S. Ct. 738, 742 (1987) (purpose of an inventory search by police is to protect property while in custody; insure against claims of lost, stolen, or vandalized property; and guard the police from danger); *Houser*, at 154 (purposes of inventory search are to find, list, and secure from loss during detention property belonging to a detained person and to protect police and temporary storage bailees from liability due to dishonest claims of theft).

■ The central inquiry in an inventory search is whether it is reasonable under all the facts and circumstances of the particular case. *Opperman*, at 373 (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 509-10, 29 L. Ed. 2d 564, 91 S. Ct. 2022, 2059-60 (1971)). Using this analysis, inventory searches conducted according to standardized police procedures have been upheld as reasonable where there is no showing of excessive discretion or investigatory motive. *Opperman*, at 372; *Bertine*, at 375. Conversely, inventory searches which are "a ruse for a general rummaging in order to discover incriminating evidence" are unreasonable. *Wells*, at 4.[2]

■ Here, Mr. Broyles testified to written standardized inventory procedures adopted by DSHS. Those procedures were followed by OSE. The apparent lack of a specific policy governing closed or sealed luggage or containers does not invalidate the search under *Wells* or *Opperman*. Nor does Mr. Broyles' testimony reflect that the search was a "ruse" to discover incriminating evidence. The inventory of the truck and the contents of the bag were consistent with the general purpose of an OSE search and the discovery by Ms. Hulse was inadvertent. The search was reasonable under the Fourth Amendment.

---

[2]In *Wells*, the lack of standardized procedures by police resulted in the exclusion of marijuana seized from a locked suitcase discovered by police while conducting an inventory search of a vehicle. There was no record of a police policy that addressed the opening of closed containers found during inventory searches. The Supreme Court held that "absent such a policy, the . . . search was not sufficiently regulated to satisfy the Fourth Amendment . . . .". *Wells*, at 5.

■ ■ Mr. Mireles has asserted sufficient compelling reasons to undertake an independent state constitutional analysis as to the validity of the search. *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986). As he contends, article 1, section 7 differs from the Fourth Amendment and generally affords individuals greater protection against warrantless searches and seizures than does the Fourth Amendment. *Bell*, at 196. It provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law". The reasonableness of a search under article 1 must also be decided in light of the facts and circumstances of the case. *Houser*, at 148.

■ ■ In a "normal" impound situation by police, the expectation is that the owner will reclaim the vehicle and its contents. The opposite is true when property is seized pursuant to RCW 74.20A. In the latter case, the owner's reasonable expectation is that the seized property will be sold to satisfy the lien and any reasonable expectation of privacy will be accordingly reduced, if not eliminated.

Mr. Mireles does not challenge the validity of the lien filed by DSHS on December 13, 1985, as to "All Property". Neither does he deny being personally served with a DSHS notice and finding of financial responsibility. He does however, for the first time on appeal, contend that the bag and its contents were personal property exempt from execution under RCW 6.15.010.

Even if Mr. Mireles' argument is considered, it is inaccurate. The exemption statute he cited limits the type and amount of personal property exemptions. It does not create a blanket exemption for all personal property. For example, it does not exempt cash over $100. Further, "other" personal property not enumerated in the statute is exempt in an amount not to exceed $1,000, of which only $100 may be in cash. RCW 6.15.010(1), (3)(b). Therefore, Mr. Mireles had no reasonable expectation that all personal property in the vehicle would be exempt from execution.[3] Further, without

---

[3]On appeal, Mr. Mireles does not contend the seizure of the *vehicle* was unlawful. Since the trial court's findings and conclusions as to the legality of the seizure of the vehicle have not been challenged, we express no opinion thereon.

opening the bag, DSHS would have no way of knowing whether any of its contents were exempt.

The State's argument that a warrant was not required because DSHS "owned" the personal property contained in the bag also lacks merit. At the time of the seizure, DSHS had the rights of a secured creditor and was entitled to possession only until the property was sold or returned to its owner.

The validity of the inventory search is not, however, dependent on the existence of lien rights by DSHS on the personal property in the vehicle. In this respect, the reasoning in *McFadden* is instructive. In *McFadden*, a vehicle was seized pursuant to RCW 69.50.505, which allows for seizure of vehicles used to facilitate drug transactions.

> While this is not an impound case, we think that the law as to an inventory search following a lawful impound provides guidance. Inventories following lawful impound are justified [citing *State v. Simpson*, 95 Wn.2d 170, 188-89, 622 P.2d 1199 (1980)]. The reasons which justify an inventory search following impoundment are even more compelling when the search follows a seizure pursuant to RCW 69.50.505. In a normal impound situation the expectation is that the owner will reclaim his vehicle. The contrary is the case in seizure of a vehicle used to facilitate drug transactions, where the expectation is that the vehicle will be forfeited. Although the vehicle is to be forfeited, there is no right to forfeit the contents, which must be returned to the owner thereof. Balancing the societal need for the search against the privacy interest provided by the constitution, we find that the search was valid.

(Footnotes omitted.) *McFadden*, at 448. Mr. Mireles contends he had the right to reject the protections afforded him by an inventory search. He cites *State v. Williams*, 102 Wn.2d 733, 689 P.2d 1065 (1984). We fail to see how Mr. Mireles could have rejected the protection the inventory search provided him under the circumstances presented here.

Mr. Mireles' argument there was no "probable cause" to believe the bag was his because it was on the passenger side of the vehicle lacks merit. *Cf. State v. Mathews*, 4 Wn. App. 653, 656, 484 P.2d 942 (1971).

Since the challenged search by OSE was reasonable, the evidence seized pursuant to the police warrant was properly admitted in evidence.

## Speedy Trial

We address next Mr. Mireles' contention he was deprived of his right to a speedy trial under CrR 3.3.[4]

Mr. Mireles contends time spent in federal custody is not included within the 90-day speedy trial period required under CrR 3.3 unless the State makes a reasonable attempt to bring the accused to trial. CrR 3.3(g)(6); *State v. Anderson*, 121 Wn.2d 852, 855 P.2d 671 (1993). He argues the State did not make a reasonable attempt because it issued a writ of habeas corpus ad prosequendum which federal authorities refused to honor and it should have followed 18 U.S.C. § 4085 (repealed by Pub. L. No. 98-473, § 218, 98 Stat. 2027). Moreover, he should have been tried in absentia.

CrR 3.3(c)(1) requires that a defendant released from jail be brought to trial not later than 90 days after arraignment. CrR 3.3(g) excludes certain periods from the 90-day limit, including "[t]he time during which a defendant is detained . . . in a federal jail or prison . . .". CrR 3.3(g)(6). *See also State v. Pizzuto*, 55 Wn. App. 421, 425-29, 778 P.2d 42 (the time during which a person is held by a foreign jurisdiction pending trial is excluded under CrR 3.3 if a release cannot be secured), *review denied*, 113 Wn.2d 1032 (1989).

Time spent by a defendant in a federal jail or prison is excluded in calculating the CrR 3.3(d)(4)[5] speedy trial time limits unless the State acts in bad faith or fails to exercise due diligence in attempting to obtain the defendant for trial. *Anderson*. We find no basis for distinguishing

---

[4]Mr. Mireles does not assign error to the trial court's decision that his speedy trial rights were not violated. He does, however, present the issue at page 4 of his opening brief.

[5]CrR 3.3(d)(4) provides:

"If a cause is remanded for trial after an appellate court accepts review or stays proceedings, the defendant shall be brought to trial not later than 60 days after that appearance by or on behalf of the defendant in superior court, with notice to both parties of any such appearance, which next follows receipt by the clerk of the superior court of the mandate or other written order, if after such appearance the defendant is detained in jail, or not later than 90 days after such appearance if the defendant is thereafter released whether or not subject to conditions of release."

rights under CrR 3.3(d)(4), at issue in *Anderson*, from rights under CrR 3.3(c)(1), at issue here. Therefore, we hold the State was obligated to exercise good faith and due diligence in obtaining Mr. Mireles for trial.

According to Mr. Mireles, the State should have proceeded to obtain his release under 18 U.S.C. § 4085. However, section 4085 was repealed and ineffective at the time Mr. Mireles committed the federal offense. This may explain why the State moved for a writ of habeas corpus ad prosequendum and federal authorities responded to the writ as issued by the State. There is no evidence of bad faith or lack of due diligence by the State in procuring Mr. Mireles for trial.

■■■■ The trial court refused to try Mr. Mireles in absentia because it found he was not absent and would be available as soon as he was tried on the federal charge. CrR 3.4(a) provides:

> The defendant shall be present at the arraignment, at every stage of the trial including the empaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by these rules, or as excused or excluded by the court for good cause shown.

The trial court did not err in determining that there was no good cause for excluding Mr. Mireles from his own trial. *State v. Bernhard*, 45 Wn. App. 590, 596-98, 726 P.2d 991 (1986), *review denied*, 107 Wn.2d 1023 (1987). The cases he cites apply to those situations where the court tries a defendant in absentia and the defendant contends he did not waive his presence at trial. *e.g., State v. LaBelle*, 18 Wn. App. 380, 568 P.2d 808 (1977).

### CONSECUTIVE SENTENCES

Mr. Mireles' final contention is the trial court abused its discretion under RCW 9.94A.400 because it deliberately delayed sentencing in order to place itself in the position of being the last sentencing court.

■■■■ RCW 9.94A.400(3) gives each successive sentencing court control over the relationship of its sentence to sentences previously imposed. *See also In re Long*, 117 Wn.2d

292, 303, 815 P.2d 257 (1991). Consequently, the later sentencing court always sets the relationship of its sentence to the former and the later court has discretion to expressly order the sentence for the latter offense to run consecutively to the former. As noted previously in this opinion, there is no evidence the trial court deliberately delayed the trial or otherwise manipulated the sequence of trials in order to "get the last shot" at Mr. Mireles.

We affirm the conviction and sentence.

MUNSON and SCHULTHEIS, JJ., concur.

Review denied at 124 Wn.2d 1029 (1994).