FILED
COURT OF APPEALS
DIVISION II

2014 AUG 12 PM 12: 47

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44433-0-II |
| Respondent, | |
| v. | |
| MICHAEL JOESPH GONZALES, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. – Michael Joesph Gonzales appeals his conviction of unlawful possession of a firearm in the first degree, arguing that the trial court erred in denying his motions to suppress his pre-arrest statements, as well as a shotgun found in his car. In a pro se statement of additional grounds (SAG), Gonzales also argues that the trial court erred in adopting the State's proposed findings of fact and conclusions of law following the suppression hearing. Because the circumstances surrounding Gonzales's statements do not show that his will was overborne or that he made them during a custodial interrogation, the trial court did not err in admitting the statements. And, because the officer opened the broken violin case in which the firearm was

found pursuant to a valid inventory search, the trial court did not err in admitting the firearm. The trial court properly adopted the State's proposed findings of fact and conclusions of law because they accurately reflected the court's oral rulings. We affirm the defendant's conviction.

FACTS

Gonzales was taken to the hospital after being in a car accident on a city street. His car was damaged and required towing. After a towing company was called to impound the car, Port Orchard Police Officer Jerry Jensen inventoried the car's contents. He found a damaged violin case in the back seat that was closed but not latched. Jensen opened the case and found a sawed-off shotgun with ammunition. He also found a closed ammunition case that contained a pistol and ammunition. A subsequent investigation revealed that Gonzales was a convicted felon.

A few hours after the accident, Detective E.J. Martin went to the hospital to speak to Gonzales. Gonzales was being treated in the critical care unit. The attending nurse told Martin that Gonzales was in pain but could talk. Martin entered the room and found Gonzales lying in bed wearing a neck collar, with a drain tube in his chest. When Martin stood by the bed and quietly said his name, Gonzales opened his eyes and looked at the detective. Martin introduced himself and asked if Gonzales remembered what had happened. Gonzales said that the car's steering had failed. When Martin showed him a photograph of the violin case and shotgun and asked about it, Gonzales remained silent. Martin then asked if his fingerprints would be found on these items, and Gonzales was silent again before saying yes. He remained silent a few moments more before asking if he was going to prison. The detective replied that he did not know, as he was merely investigating the case.

After the State charged Gonzales with unlawful possession of a firearm in the first degree, Gonzales moved to suppress his hospital statements, the shotgun, and the contents of the ammunition case. At the suppression hearing, Officer Jensen testified that when a car is towed, officers have to inventory its contents. Jensen added that the purpose of the inventory is not to investigate a crime but to see if there are valuables in the car and to protect them.

Jensen explained that when he found the violin case, its "nose" was broken and the case was not latched. Report of Proceedings (RP) (Oct. 8, 2014) at 27. He opened the case to see if it contained a violin that he needed to take to the office for safekeeping. In doing so, he was following the procedures used by the Port Orchard Police Department.

The trial court ruled that Jensen was performing an inventory search when he came upon the violin case and that his testimony that it might contain something of value was persuasive. The court concluded as follows:

> That the search of the violin case was an appropriate exercise of police prerogative in conducting an inventory search because it was consistent with policy of the agency, and because it was reasonable and appropriate for the officer to determine if the violin case contained valuable property that should be removed from the automobile for safekeeping and to determine if the contents had been damaged before being removed.

Clerk's Papers (CP) at 15 (Conclusion of Law IV). Because the search of the violin case was an appropriate and reasonable inventory search, its contents were admissible.[1]

With regard to the admissibility of Gonzales's statements, Detective Martin testified that Gonzales appeared to understand their conversation, that his answers to questions were

---

[1] But, because the officer had a reasonable suspicion of criminal activity by the time he opened the ammunition case, the court concluded that this search required a warrant and suppressed the contents of the ammunition case. The State does not appeal this ruling.

appropriate, and that he did not exhibit any confusion. At the end, Gonzales asked a question that related to the topic of the conversation. Martin denied making threats or promises to Gonzales and explained that he did not read Gonzales his *Miranda* rights[2] because he did not arrest, handcuff, or detain him.

Gonzales testified that he was on pain medication at the time for injuries that included a broken pelvis. He added that he did not remember the conversation with Martin.

The trial court rejected the argument that Gonzales's Fifth Amendment rights were violated by Martin's non-coercive questioning, reasoning that while Martin may have been "somewhat opportunistic" in talking to Gonzales at the hospital, their conversation did not violate Gonzales's constitutional rights. RP (Oct. 8, 2014) at 19. The court entered the following conclusions of law:

> That while the defendant was restrained in the hospital room by the medical therapy he was receiving from the hospital at no time was he restrained in a manner that would reasonably suggest to the defendant that he was under police restraint, and therefore he was not under arrest requiring him to be advised of Miranda warnings.

> That the statements made by the defendant to Detective E.J. Martin were voluntary and not the product of any threat or coercion that would violate the Fifth Amendment protections of the defendant.

CP at 12 (Conclusions of Law II, III). Consequently, Gonzales's statements were admissible in the State's case-in-chief.

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

No. 44433-0-II

After the parties agreed to a bench trial on stipulated facts, the trial court found Gonzales guilty as charged and imposed a prison-based Drug Offender Sentencing Alternative sentence.[3] Gonzales appeals the trial court's denial of his motions to suppress.

ANALYSIS

A. ADMISSIBILITY OF STATEMENTS

1. Standard of Review

We review the decision to deny a motion to suppress by determining whether the findings of fact are supported by substantial evidence and whether those findings support the conclusions of law. *State v. Rosas-Miranda*, 176 Wn. App. 773, 779, 309 P.3d 728 (2013); *State v. Ross*, 106 Wn. App. 876, 880, 26 P.3d 298 (2001), *review denied*, 145 Wn.2d 1016 (2002). Where the findings are not challenged, we treat them as verities on appeal and review the conclusions of law de novo. *State v. O'Neill*, 148 Wn.2d 564, 571, 62 P.3d 489 (2003); *State v. Johnson*, 128 Wn.2d 431, 443, 909 P.2d 293 (1996).

Gonzales challenges the trial court's conclusions that his statements were voluntary and, thus, admissible. He contends that the admission of his involuntary statements violated his right to due process, as well as his *Miranda* rights.

2. Due Process

The due process voluntariness test examines whether a defendant's will was overborne by the circumstances surrounding the giving of a confession. *Dickerson v. United States*, 530 U.S.

---

[3] RCW 9.94A.660.

5

428, 434, 120 S. Ct. 2326, 147 L. Ed. 2d 405 (2000).[4] If a person's confession was not the product of a rational intellect and free will, the confession was coerced and is inadmissible. *Townsend v. Sain*, 372 U.S. 293, 307, 83 S. Ct. 745, 9 L. Ed. 2d 770 (1963), *overruled on other grounds by Keeney v. Tamayo-Reyes*, 504 U.S. 1, 112 S. Ct. 1715, 118 L. Ed. 2d 318 (1992); *State v. Reuben*, 62 Wn. App. 620, 624, 814 P.2d 1177, *review denied*, 118 Wn.2d 1006 (1991). To be voluntary, a confession must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises. *United States v. Lall*, 607 F.3d 1277, 1285 (11th Cir. 2010). Reviewing courts examine the totality of the circumstances to determine whether a confession was voluntary. *Lall*, 607 F.3d at 1285.

These standards apply to a drug-induced statement. *Townsend*, 372 U.S. at 307; *see State v. Gregory*, 79 Wn.2d 637, 642, 488 P.2d 757 (1971) (admissibility of statements made by defendant who has been administered narcotic drugs depends on unique facts of case), *overruled on other grounds by State v. Rogers*, 83 Wn.2d 553, 520 P.2d 159, *cert denied*, 419 U.S. 1053 (1974). At issue in *Townsend* was the voluntariness of a confession made after the defendant was administered a drug constituting a "truth serum." 372 U.S. at 308. The Court found it difficult to imagine a situation where a confession would be less the product of a free intellect and less voluntary than when brought about by such a drug. *Townsend*, 372 U.S. at 307-08.

In *Gregory*, the Washington Supreme Court cited *Townsend* in determining that the hospitalized defendant's rationality was not hindered, diminished, or affected by the narcotics he had received. 79 Wn.2d at 642. Although drowsy on first awakening, the defendant freely

---

[4] The Court traced this test to cases decided before *Miranda* but noted that it has not been abandoned. *Dickerson*, 530 U.S. at 434.

answered the officers' questions. *Gregory*, 79 Wn.2d at 642. He refused to answer further questions only after being accused of lying, and this defensive action supported the view that he was in full possession of his mental faculties.[5] *Gregory*, 79 Wn.2d at 642; *see also State v. Kelter*, 71 Wn.2d 52, 55, 426 P.2d 500 (1967) (statements elicited by police while defendant was hospitalized were voluntarily given; his volition was not impaired and he was not disabled from making a rational choice).

Here, the trial court found as follows with regard to the effect of pain medication on Gonzales:

> That while the defendant appeared to be in pain, and was likely on pain medication, the detective carried on a short conversation with the defendant in which it was apparent that the defendant was oriented to time and place, understood English, understood the nature and subject of the defendant's questions and gave appropriate and logical answers to the questions posed by the defendant. At one point the defendant also asked the detective a question that was relevant and pertinent to the subject matter of the conversation, which was about firearms in the car at the time of the collision.

CP at 11 (Finding of Fact VI).

While not assigning error to this finding, Gonzales argues that it improperly focuses on his coherence during the questioning. As support, he cites *Townsend*, which disapproved of a standard that rendered a confession admissible as long as the accused was capable of making a narrative of past events or of stating his own participation in the crime. 372 U.S. at 320.

Even if not determinative of voluntariness, coherency appears relevant in considering the circumstances surrounding a defendant's confession. If, as alleged, the intoxicated defendant

---

[5] We note that the defendant in *Gregory* received *Miranda* warnings before his questioning. 79 Wn.2d at 642.

was unable to stand alone and was "jabbering," "babbling," and "raving," the error in admitting his contemporaneous confession "was so gross and so prejudicial as to amount to denial of due process." *Gladden v. Unsworth*, 396 F.2d 373, 379, 380 (9th Cir. 1968); *see also State v. Cuzzetto*, 76 Wn.2d 378, 383, 457 P.2d 204 (1969) (defendant's intoxication requires exclusion of confession when intoxication amounts to mania).

Similarly, coherency was part of the due process analysis in *Mincey v. Arizona*, 437 U.S. 385, 398, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978). In addressing whether the defendant's statements were the product of a rational intellect and free will, as *Townsend* requires, the Court observed:

> It is hard to imagine a situation less conducive to the exercise of "a rational intellect and a free will" than Mincey's. He had been seriously wounded just a few hours earlier, and had arrived at the hospital "depressed almost to the point of coma," according to his attending physician. Although he had received some treatment, his condition at the time of [the officer's] interrogation was still sufficiently serious that he was in the intensive care unit. He complained to [the officer] that the pain in his leg was "unbearable." He was evidently confused and unable to think clearly about either the events of that afternoon or the circumstances of his interrogation, since some of his written answers were on their face not entirely coherent.

*Mincey*, 437 U.S. at 398-99 (footnotes omitted); *see also Vandegriff v. State*, 219 Tenn. 302, 308-09, 409 S.W.2d 370 (Tenn. 1966) (statements were not product of free intellect when made by intoxicated, severely injured, and dazed defendant).

Even though Gonzales was under the effect of pain medication when he spoke with the detective, the circumstances do not show that he was unable to exercise his rational intellect or that he was "shorn of his volition." *Vandegriff*, 219 Tenn. at 309. The detective did not threaten Gonzales in any way. Gonzales answered some questions readily, declined to answer one

8

question, hesitated before responding to another, and asked an appropriate question as well. The circumstances do not show that his will was overborne by either the detective's questions or the pain medication he was taking, and we reject this due process challenge to the voluntariness of his statements.

3. *Miranda* Test

Gonzales argues further that his statements must be suppressed because he made them without the benefit of *Miranda* warnings.

Police must give *Miranda* warnings when a suspect is interrogated while in police custody. *Rosas-Miranda*, 176 Wn. App. at 779. "Without *Miranda* warnings, a suspect's statements during custodial interrogation are presumed involuntary." *State v. Heritage*, 152 Wn.2d 210, 214, 95 P.3d 345 (2004).

There is no dispute that Gonzales was interrogated; the issue is whether that interrogation occurred while he was in custody. *See State v. McWatters*, 63 Wn. App. 911, 915, 822 P.2d 787 (interrogation involves express police questioning that is likely to elicit an incriminating response), *review denied*, 119 Wn.2d 1012 (1992). The "in custody" determination requires an inquiry into the circumstances surrounding the interrogation and whether a reasonable person would have felt that he was not at liberty to terminate the interrogation and leave. *Thompson v. Keohane*, 516 U.S. 99, 112, 116 S. Ct. 457, 133 L. Ed. 2d 383 (1995). When a person is unable to leave an interrogation due to medical treatment, the question becomes whether he was at liberty to terminate the interrogation and cause the officers to leave. *United States v. Infante*, 701 F.3d 386, 396 (1st Cir. 2012), *cert. denied*, 133 S. Ct. 2841 (2013).

In *Infante*, the First Circuit concluded that the circumstances showed that a reasonable person in the defendant's position would have felt free to terminate two interviews and ask the officers to leave. 701 F.3d at 397. The relevant circumstances included the neutral setting of the hospital room as well as the facts that Infante went to the hospital of his own accord, hospital staff came and went freely during the interviews, the number of officers in the room was not overwhelming, the officers did not physically restrain Infante or act in a threatening manner, the interviews were short (26 and 21 minutes), and an officer informed Infante during each interview that he was not under arrest or in custody and did not have to speak with the officers. *Infante*, 701 F.3d at 397-98. Moreover, "[d]espite having received pain medication, Infante was coherent and responsive, showing no sign of mental impairment." *Infante*, 701 F.3d at 397.

Similarly, a hospitalized defendant was not under custody when he spoke to a detective in *State v. Butler*, 165 Wn. App. 820, 828, 269 P.3d 315 (2012). Of significance were the facts that the defendant was restricted to a hospital room by his injuries and not by the police, no officers were stationed inside or outside his room, and the defendant's nurse, rather than law enforcement, ultimately controlled access to him. *Butler*, 165 Wn. App. at 828; *see also Kelter*, 71 Wn.2d at 54 (defendant was not in custody even though confined to hospital room because he had not been arrested or otherwise restrained by the police).

Where a hospitalized defendant's attempts to terminate his communication to officers were twice disregarded, however, the Colorado Supreme Court determined that he was in custody. *Effland v. People*, 240 P.3d 868, 876 (Colo. 2010); *see also Clay v. State*, 290 Ga. 822, 825, 725 S.E.2d 260 (2012) (concluding that defendant was in custody when he awoke to find police officer in his treatment room who avoided the defendant's questions about whether he was

going to be charged, told the defendant that he needed to come down to the police station to talk to the police, never told the defendant he was not under arrest, and called for a patrol vehicle to transport the defendant to the police station).

The evidence here shows that the attending nurse told Detective Martin that Gonzales was on pain medication but could talk. The detective stood at the side of the bed and had a brief conversation with Gonzales. He was the only officer present and did not touch or threaten Gonzales. Although Martin never informed Gonzales that he was not under arrest and did not need to speak, Martin did not act in any way to compel Gonzales to respond. We hold that the trial court did not err in concluding that Gonzales was not under custody sufficient to require *Miranda* warnings.

## B. VALIDITY OF SEARCH

Gonzales also argues that the warrantless search of his car and the violin case violated the Fourth Amendment and article I, section 7 of the Washington Constitution. He claims that the search of his car was not a valid inventory search and adds that even if we uphold that search, the opening of the closed violin case exceeded its lawful scope. Here again, we review the challenged findings of fact for substantial evidence, and we review the court's conclusions of law de novo.

### 1. Inventory Search

The Fourth Amendment and article I, section 7 protect citizens from unreasonable government searches. *State v. Mireles*, 73 Wn. App. 605, 611, 871 P.2d 162, *review denied*, 124 Wn.2d 1029 (1994). Warrantless searches are unreasonable unless they fall within an exception to the warrant requirement. *Mireles*, 73 Wn. App. at 611. One such exception is an inventory

search accompanying a lawful vehicle impound. *State v. Tyler*, 166 Wn. App. 202, 208, 269 P.3d 379 (2012), *aff'd*, 177 Wn.2d 690, 302 P.3d 165 (2013). An officer may take custody of an unattended vehicle if it obstructs traffic or jeopardizes public safety. RCW 46.55.113(2)(b). Gonzales does not challenge the court's finding that the towing and impoundment of his car was necessary.

Unlike a probable cause search and a search incident to arrest, the purpose of an inventory search is not to discover evidence of a crime but to perform an administrative or caretaking function. *Mireles*, 73 Wn. App. at 611-12. The principal purposes of an inventory search are to (1) protect the vehicle owner's property, (2) protect the police against false claims of theft by the owner, and (3) protect the police from potential danger. *Tyler*, 166 Wn. App. at 209-10.

Officer Jensen testified that he needed to inventory the contents of the car before it was towed to protect any valuables it contained, which he would then take to the office for safekeeping. He testified that he had used this procedure in his 32 years with the department and that other officers performed inventory searches in the same way. The trial court entered this finding of fact reflecting his testimony:

> That Officer Jensen has been with the Port Orchard Police Department for over thirty years and it is department practice, and his practice, to look for items of possible significant value or hazard so that they can be removed from the vehicle for safekeeping. The officer is aware that tow storage lots are commonly victimized by thieves.

CP at 14 (Finding of Fact IV).

While not assigning error to this finding, Gonzales argues that it does not establish that the officer performed the inventory search pursuant to the necessary standardized procedures.

Standardized criteria or established routine must regulate an officer's actions during inventory searches. *Florida v. Wells*, 495 U.S. 1, 4, 110 S. Ct. 1632, 109 L. Ed. 2d 1 (1990); *Colorado v. Bertine*, 479 U.S. 367, 375-76, 107 S. Ct. 738, 93 L. Ed. 2d 739 (1987). Such policies are intended to limit the discretion of law enforcement officers so that inventory searches do not become evidentiary searches. *United States v. Andrews*, 22 F.3d 1328, 1334-36 (5th Cir.), *cert. denied*, 513 U.S. 941 (1994). Written policies, however, are not required. *United States v. Lowe*, 9 F.3d 43, 46 (8th Cir. 1993), *cert. denied*, 510 U.S. 1181 (1994); *see also State v. Weide*, 155 Wis.2d 537, 549, 455 N.W.2d 899 (1990) (cases stating that inventory search must be carried out in accordance with standardized procedures or established routine impose no requirement that the policy or procedure must be in writing). Nor must inventory policies address every possible container an officer may encounter during an inventory search. "A police officer may be allowed sufficient latitude to determine whether a particular container should or should not be opened in light of the nature of the search and characteristics of the container itself." *Wells*, 495 U.S. at 4; *see also United States v. Mundy*, 621 F.3d 283, 290 (3d Cir. 2010) (declining to create "a rule of constitutional dimension that requires an inventory search protocol to predict every conceivable scenario an officer may happen upon while conducting an inventory search"), *cert. denied*, 131 S. Ct. 1531 (2011).

As stated, an inventory search is permissible if it is conducted to protect the vehicle owner's property or to protect the police against false claims of theft. Officer Jensen testified that it is department practice to do an inventory search to see if there are any valuables in the car

and to protect them. He testified that he had followed this practice during his 32 years with the department and that his fellow officers did so as well. The trial court's finding that Jensen was following department practice was sufficient to show that the officer acted in accordance with established routine and agency policy and engaged in a lawful inventory search.

2. Closed Container

Gonzales argues further that even if Officer Jensen's initial search of his car was lawful, the officer exceeded the permissible scope of that search by opening the closed violin case.

Opening a closed container pursuant to established inventory search procedure does not violate the Fourth Amendment. *Wells*, 495 U.S. at 4; *Bertine*, 479 U.S. at 374; *Mundy*, 621 F.3d at 290; *Mireles*, 73 Wn. App. at 612. In arguing that article I, section 7 compels a different conclusion, Gonzales relies on *State v. White*, 135 Wn.2d 761, 958 P.2d 982 (1998) and *State v. Houser*, 95 Wn.2d 143, 622 P.2d 1218 (1980).

*Houser* adopted a bright-line rule prohibiting police from intruding into an individual's privacy interests in a locked trunk and limiting inventory searches to the passenger compartment of a vehicle. *White*, 135 Wn.2d at 772. The *Houser* court determined that property left in the locked trunk of a vehicle was not in great danger of theft. 95 Wn.2d at 159. Based on this reasoning, the *Houser* court concluded that the police exceeded the bounds of a proper inventory search by searching the contents of a closed toiletry bag found in a locked trunk. 95 Wn.2d at 159. In so holding, the *Houser* court recognized that citizens have a significant privacy interest in their personal luggage, as opposed to other containers. 95 Wn.2d at 157-58.

The *White* court reaffirmed *Houser* and its limitation of inventory searches to the passenger compartment of a vehicle. 135 Wn.2d at 772. Because the opening of the trunk

exceeded the scope of a lawful inventory search, the court did not address the search of a closed tackle box found in that trunk. *White*, 135 Wn.2d at 772.

*Houser* and *White* do not show that Officer Jensen exceeded the scope of a lawful inventory search in this case. First of all, the officer searched the passenger area of the car and not a locked trunk. Second, he opened an unlatched and broken violin case rather than a piece of personal luggage. We agree with the trial court that "it was reasonable and appropriate for the officer to determine if the violin case contained valuable property that should be removed from the automobile for safekeeping and to determine if the contents had been damaged before being removed." CP at 15 (Conclusion of Law IV (part)).

The trial court did not err in denying the motion to suppress and in admitting the contents of the violin case.

C. SAG

Gonzales contends in his SAG that the trial court erred by adopting the State's proposed findings of fact and conclusions of law and that we should strike the findings and conclusions as a result.

When the State prevails in a suppression hearing, it is obligated to prepare, present, and have entered findings of fact and conclusions of law which will, standing alone, withstand an appellate court's scrutiny for constitutional error. *State v. Poirier*, 34 Wn. App. 839, 841, 664 P.2d 7 (1983). The State's findings and conclusions reflected the trial court's oral rulings in this case, and we see no error in the court's adoption thereof.

No. 44433-0-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Lee, J.

We concur:

_____
Hunt, J.

_____
Bjorgen, A.C.J.