[No. 64973-1. En Banc.]
Argued October 15, 1997.    Decided July 16, 1998.
THE STATE OF WASHINGTON, *Respondent,* v. RONALD E. WHITE, *Petitioner.*

---

DURHAM, C.J., and ALEXANDER, J., dissent by separate opinions.

*Resick, Hansen & Follis*, by *Starck M. Follis*, for petitioner.

*David S. McEachran, Prosecuting Attorney*, and *Laura D. Hayes* and *David M. Grant, Deputies*, for respondent.

*Leo E. Poort* on behalf of Washington Association of Sheriffs and Police Chiefs, amicus curiae.

JOHNSON, J. — We review the permissible scope of a war-

rantless inventory search of a locked automobile trunk under article I, section 7 of the Washington State Constitution. The search of a locked automobile trunk was conducted during an impound proceeding following the arrest of the Defendant. In 1980, this court held police may not search a locked automobile trunk during an inventory search absent a manifest necessity, not present here. *State v. Houser*, 95 Wn.2d 143, 156, 622 P.2d 1218 (1980). The Court of Appeals focused on the accessibility of items in the trunk to a "would-be thief" due to the vehicle's trunk release mechanism in the glove box and held the search legal. *State v. White*, 83 Wn. App. 770, 924 P.2d 55 (1996). We reverse the Court of Appeals and hold article I, section 7 prohibits the warrantless search of the locked trunk of an automobile.

## FACTS

The Defendant, Ronald E. White, was stopped by police in Bellingham, Washington for failing to stop at a stop sign. When questioned, White wrongfully identified himself as "Dan White" and initially said he did not own the car. The officer asked the Defendant for consent to search the vehicle, which he refused. The officer asked the Defendant to exit the vehicle and, despite the fact the officer stopped the Defendant for running a stop sign, presented "Dan White" with a citation for driving with an expired license only. The officer told the Defendant his vehicle would be impounded under RCW 46.20.435,[1] because the Defendant had an expired driver's license, and inventoried under Bellingham Police Department procedures.

The Defendant then admitted he was Ron White and told the police officer he did not properly identify himself

---

[1]RCW 46.20.435(1) (repealed by LAWS OF 1996, ch. 89, § 3) provides:

"Upon determining that a person is operating a motor vehicle without a valid driver's license in violation of RCW 46.20.021 or with a license that has expired for ninety days or more, or with a suspended or revoked license in violation of RCW 46.20.342 or 46.20.420, a law enforcement officer may immediately impound the vehicle that the person is operating."

because of outstanding warrants for his arrest. The officer ran a second Department of Motor Vehicles search and discovered White's driving status had been revoked and there were six outstanding warrants for the Defendant's arrest. The officer arrested the Defendant for the outstanding warrants and for driving while license revoked and placed the Defendant in the patrol car.

The police officer impounded the vehicle under RCW 46.20.435 because (1) the driver was operating a vehicle with a revoked license; (2) the officer was unsure of the true ownership of the vehicle; and (3) the Defendant had many outstanding warrants for his arrest.

The inventory search was conducted in accordance with Bellingham Police Department procedures which required police to search the trunk if it could be opened by a key or a release latch. During this search, a trunk release button was found in the unlocked glove box which opened the locked trunk. In the trunk, officers searched an unlocked fishing tackle box which, when opened, was found to contain drug paraphernalia, marijuana, lighters, smoking devices, clear-wrapped currency, and clear-wrapped cocaine.

The State charged White with unlawful possession of a controlled substance with intent to deliver in violation of RCW 69.50.401(a)(1) and driving while license suspended or revoked in violation of RCW 46.20.342. At trial, White moved to suppress the items found in his trunk. He argued the police had exceeded the scope of a lawful inventory search as set out in *Houser*, 95 Wn.2d 143 by opening the locked trunk. The trial court agreed, suppressed the evidence, and dismissed the case. The Court of Appeals reversed and held the search valid. *White*, 83 Wn. App. at 782. We reverse.

## ANALYSIS

In this case, the police conducted a warrantless inventory search of the trunk of the Defendant's automobile. In *Houser*, 95 Wn.2d 143, we defined the permissible scope of

an inventory search of an impounded vehicle. While we said inventory searches conducted under standard police procedures are reasonable, we stated "an inventory search may not be unlimited in scope." *Houser*, 95 Wn.2d at 154. Concerned about the possibility for abuse, we limited the scope of an inventory search "to those areas necessary to fulfill its purpose." *Houser*, 95 Wn.2d at 155. After finding there was not an unreasonable risk of theft for property left in the locked trunk of a vehicle, we explicitly held an officer may not open and examine the locked trunk of an impounded vehicle during an inventory search absent a *manifest necessity* for conducting the search. *Houser*, 95 Wn.2d at 156.[2] The State argues, and the Court of Appeals agreed, the search was lawful in this case because access to the trunk was obtained via a trunk release button located in the unlocked glove box. Both suggest this release mechanism creates a situation distinguishable from *Houser*; we disagree.

In this case, the Court of Appeals did not read *Houser* as establishing a bright-line rule prohibiting the police from searching a locked automobile trunk. *White*, 83 Wn. App. at 778. Rather, the Court of Appeals understood the analysis in *Houser* to focus on whether the potential for theft of valuables and for false claims against the police department justified the intrusion when the trunk could be opened from inside the passenger compartment. *White*, 83 Wn. App at 779-80. The Court of Appeals focused on the prevention of theft as described in *South Dakota v. Opperman*, 428 U.S. 364, 96 S. Ct. 3092, 49 L. Ed. 2d 1000 (1976), rather than on the greater protection afforded to individuals under article I, section 7 of the Washington State Constitution. The Court of Appeals misread the essential holding of *Houser*.

In *Houser*, we found police could search an unlocked glove compartment of an abandoned automobile during an inventory search because documents of owner-

---

[2]The State has not argued any manifest necessity exists in this case.

ship and registration are kept there and because the glove box is a place of temporary storage of valuables. However, in *Houser* we limited the scope of the search and stated:

> We do not believe that it was necessary to enter the locked trunk in order to serve these purposes. We note that the inventory search which was approved in *Opperman* extended only to the car's unlocked glove compartment. Moreover, property locked in the trunk of an automobile, as here, presents no great danger of theft. It is apparent that a would-be thief would be unaware of the existence of property of value in the trunk. Indeed, countless numbers of automobiles with locked trunks are daily left on the city streets of this country without unreasonable risk of theft. Accordingly, we think that any need to protect property located in a locked trunk is outweighed by *the countervailing privacy interests of the individual* in the enclosed area of the trunk.

*Houser*, 95 Wn.2d at 155-56 (emphasis added) (footnote omitted).[3] From this language, our focus was primarily on the individual privacy interests and not on the needs of police in avoiding claims, as the Court of Appeals discussed. By focusing on individual privacy interests, our analysis in *Houser* necessarily focused on the inquiry required by article I, section 7. This is unlike the Fourth Amendment analysis the United States Supreme Court used in *Opperman*.

The fact an automobile may have a trunk release mechanism does not diminish an individual's privacy interests. Inside trunk latch releases are merely a substitute for the use of a key to unlock the trunk. Whether a locked

---

[3]The State and amicus curiae, the Washington Association of Sheriffs and Police Chiefs, both argue the *Houser* language relied upon by White and the trial court is dicta. They are incorrect. "[W]here a decision rests on two or more grounds, none can be relegated to the category of *obiter dictum*." *Woods v. Interstate Realty Co.*, 337 U.S. 535, 537, 69 S. Ct. 1235, 93 L. Ed. 1524 (1949). *See also English v. United States*, 42 F.3d 473, 485 (9th Cir. 1994); *Russell v. Commissioner of Internal Revenue*, 678 F.2d 782, 785 n.2 (9th Cir. 1982); *Export Group v. Reef Indus., Inc.* 54 F.3d 1466, 1471 (9th Cir. 1995). In *Houser*, the decision to suppress the evidence could rest on two rationales—the illegality of the impound or the illegality of the search. Simply because the unlawfulness of the impound was analyzed first does not make the analysis of the inventory search dicta.

trunk is opened by a key or a latch, it is still locked. The privacy interests are the same. We hold the use of the trunk release mechanism in this case is still the warrantless search of a locked trunk, which brings this case squarely under the holding of *Houser*.

The Court of Appeals was correct in determining that *Houser* is grounded in article I, section 7 of the Washington State Constitution. *White*, 83 Wn. App. at 781-82. Article I, section 7 provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." Under the Washington Constitution, the relevant inquiry is whether the State unreasonably intruded into the Defendant's private affairs. *State v. Myrick*, 102 Wn.2d 506, 510, 688 P.2d 151 (1984). The analysis under article I, section 7 focuses, not on a defendant's actual or subjective expectation of privacy but, as we have previously established, on those privacy interests Washington citizens held in the past and are entitled to hold in the future. *Myrick*, 102 Wn.2d at 510-11. The holding in *Houser* centered on the privacy interests of the individual; accordingly, *Houser* is an article I, section 7 case.

The analysis in *Houser* is not unusual. We have often diverged from the United States Supreme Court's Fourth Amendment jurisdiction, and we have more narrowly defined the exceptions to the search warrant requirements.[4] We are once again confronted with the warrantless search

---

[4]*See, e.g., State v. Myrick*, 102 Wn.2d 506, 510, 688 P.2d 151 (1984) (aerial surveillance of an open field), response to *Oliver v. United States*, 466 U.S. 170, 104 S. Ct. 1735, 80 L. Ed. 2d 214 (1984); *State v. Jackson*, 102 Wn.2d 432, 439, 688 P.2d 136 (1984) (existence of probable cause in relation to informant's tip), response to *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983); *State v. Chrisman*, 100 Wn.2d 814, 818, 676 P.2d 419 (1984) (warrantless search of dormitory after arrest for alcohol), response to *Washington v. Chrisman*, 455 U.S. 1, 102 S. Ct. 812, 70 L. Ed. 2d 778 (1982); *State v. Ringer*, 100 Wn.2d 686, 690, 674 P.2d 1240 (1983) (scope of warrantless search of automobile incident to arrest), *overruled on other grounds by State v. Stroud*, 106 Wn.2d 144, 720 P.2d 436 (1986), response to *United States v. Ross*, 456 U.S. 798, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982) and *New York v. Belton*, 453 U.S. 454, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981); *State v. White*, 97 Wn.2d 92, 108-09, 640 P.2d 1061 (1982) (application of exclusionary rule when right to privacy unreasonably invaded), response to *Michigan v. DeFillippo*, 443 U.S. 31, 99 S. Ct. 2627, 61 L. Ed. 2d 343 (1979); *State v. Simpson*, 95 Wn.2d 170, 177-78, 622 P.2d 1199 (1980)

of an automobile. However, in this case we have an analytical advantage because we know article I, section 7 provides more protection to individuals from searches and seizures than the Fourth Amendment. Our inquiry is no longer whether article I, section 7 provides greater protection but, rather, does the scope of the protection apply to the facts of the case.[5] No *Gunwall*[6] analysis is necessary in this case because we apply established principles of state constitutional jurisprudence. We are guided in this decision by those prior cases that have defined the fact that article I, section 7 differs from the Fourth Amendment, at least in the context of the specific legal issue presented here. Once we agree that our prior cases direct the analysis to be employed in resolving the legal issue, a *Gunwall* analysis is no longer helpful or necessary.[7]

Any analysis of article I, section 7 in Washington begins with the proposition that warrantless searches are unreasonable per se. *State v. Hendrickson*, 129 Wn.2d 61, 70, 917 P.2d 563 (1996). Despite this strict rule, there are " 'jealously and carefully drawn' exceptions" to the warrant requirement. *Hendrickson*, 129 Wn.2d at 70 (quoting *Houser*, 95 Wn.2d at 149 (quoting *Arkansas v. Sanders*, 442 U.S. 753, 759, 99 S. Ct. 2586, 61 L. Ed. 2d 235 (1979))).[8] An inventory search of an automobile was conducted by police in this case. The three principal reasons for conducting an inventory search are: (1) to protect the vehicle owner's property; (2) to protect the police against false claims of

(automatic standing to challenge seizure), response to *United States v. Salvucci*, 448 U.S. 83, 100 S. Ct. 2547, 65 L. Ed. 2d 619 (1980).

[5]*See also State v. Hendrickson*, 129 Wn.2d 61, 69 n.1, 917 P.2d 563 (1996).

[6]*State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4TH 517 (1986).

[7]A *Gunwall* analysis is nevertheless required in cases where the legal principles are not firmly established, and certainly a *Gunwall* analysis is helpful in determining the scope of the broader protections provided in other contexts.

[8]In Washington, the exceptions have fallen into six categories: (1) consent; (2) exigent circumstances; (3) search incident to a valid arrest; (4) inventory searches; (5) plain view; and (6) *Terry* investigative stops, *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). *Hendrickson*, 129 Wn.2d at 71.

theft by the owner;[9] and (3) to protect the police from potential danger. *Houser*, 95 Wn. 2d at 154. While the validity of an inventory search is not at issue, the scope of such a search is.

The general rule in Washington regarding the admissibility of evidence discovered during an inventory search accompanying the impoundment of a vehicle was set forth in *State v. Montague*, 73 Wn.2d 381, 438 P.2d 571 (1968).

> When . . . the facts indicate a lawful arrest, followed by an inventory of the contents of the automobile preparatory to or following the impoundment of the car, and there is found to be reasonable and proper justification for such impoundment, and where the search is not made as a general exploratory search for the purpose of finding evidence of a crime but is made for the justifiable purpose of finding, listing, and securing from loss, during the arrested person's detention, property belonging to him, then we have no hesitancy in declaring such inventory reasonable and lawful, and evidence of crime found will not be suppressed.

*Montague*, 73 Wn.2d at 385. Though the *Montague* court found inventory searches valid, the court firmly stated that inventory searches must be undertaken for lawful purposes.

> [N]either would this court have any hesitancy in suppressing evidence of crime found during the taking of the inventory, if we found that either the arrest or the impoundment of the vehicle was resorted to as a device and pretext for making a general exploratory search of the car without a search warrant.

*Montague*, 73 Wn.2d at 385.

From the history of article I, section 7 and from the precedent established in *Montague*, the rule enunciated in *Houser* emerged. Police are not permitted to search the

---

[9]This stated purpose is articulated over and over as a valid justification for an inventory search. However, its constant repetition has created a justification without merit or the benefit of true legal analysis. When the police impound a vehicle they become involuntary bailees. In such a situation the police have the obligation to use only slight care for the impounded vehicle and its contents. *See* 3 WAYNE R. LaFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 7.4(a) (3d ed. 1996).

locked trunk of an impounded vehicle absent a manifest necessity for so doing. Further, compliance with established police procedures does not constitutionalize an illegal search and will not enable the police to search a locked trunk without a warrant.[10] While we recognize inventory searches may serve legitimate government interests, these interests are not limitless and do not outweigh the privacy interests of Washington citizens.

In this case, the police searched a locked automobile trunk during an inventory search. The police followed the Bellingham Police Department's standard impound/inventory procedure directing the police to search the trunk if access can be obtained by key or trunk release. Despite the Court of Appeals attempt to justify the search on the grounds of accessibility to a "would-be thief," and the police department's reference to its long-standing procedures, no manifest necessity was demonstrated. Simply stated, the possibility of theft does not rise to the level of manifest necessity.[11] *Houser* established a bright-line rule prohibiting the police from intruding into an individual's privacy interests of a locked trunk regardless of its accessibility. Whether a key is needed to unlock the trunk or whether an interior release is used is of no distinction to the privacy interests of the individual under article I, section 7 of the Washington State Constitution.

---

[10]"Unconstitutional searches cannot be constitutionalized by standardizing them as a part of normal police practice." *State v. Jewell*, 338 So. 2d 633, 640 (La. 1976); *see Houser*, 95 Wn.2d at 154. *But see Opperman*, 428 U.S. at 371-72; *Colorado v. Bertine*, 479 U.S. 367, 372-74, 107 S. Ct. 738, 93 L. Ed. 2d 739 (1987); *Florida v. Wells*, 495 U.S. 1, 4, 110 S. Ct. 1632, 109 L. Ed. 2d 1 (1990).

[11]Further, the record does not indicate White was ever asked whether he would consent to an inventory search, and the State makes no claim that he was. White was never given the opportunity to reject the protection available and, thus, the search is also suspect under *State v. Williams*, 102 Wn.2d 733, 689 P.2d 1065 (1984). In *Williams*, the court held police may not conduct a routine inventory search following the lawful impoundment of a vehicle without asking the owner, if present, if he or she will consent to the search. *Williams*, 102 Wn.2d at 743; *see also United States v. Wanless*, 882 F.2d 1459, 1463 (9th Cir. 1989) (decided on state grounds); Robert F. Utter, *Survey of Washington Search and Seizure Law: 1988 Update*, 11 U. Puget Sound L. Rev. 411, 578 (1988). In Washington, an individual is free to reject the protection that an inventory search provides and take the chance that no loss will occur.

We do not address the impound issue or the search of the closed tackle box because the permissible scope of an article I, section 7 inventory search has been exceeded. We reaffirm *Houser*, which limits inventory searches to the passenger compartment of a vehicle and does not include locked trunks. We hold searches of closed and locked trunks are limited to those few situations when manifest necessity exists.

The evidence is suppressed and the Court of Appeals reversed. We agree with Judge Mary Kay Becker: *"Houser* is a simple, comprehensive and workable decision . . . . it lacks neither in logic nor common sense." *White*, 83 Wn. App. at 785 (Becker, J., dissenting).

DOLLIVER, SMITH, GUY, MADSEN, TALMADGE, and SANDERS, JJ., concur.

DURHAM, C.J. (dissenting) — The majority erroneously concludes that *State v. Houser*, 95 Wn.2d 143, 622 P.2d 1218 (1980) was decided on state constitutional grounds. *Houser* was decided solely on federal constitutional grounds and the majority has no other support for the proposition that inventory searches of vehicle trunks require separate state constitutional analysis. Because the warrantless inventory search of White's car was permissible under the Fourth Amendment, the seized evidence should be admissible at trial. I, therefore, dissent.

I

The majority holds that the inventory search of White's car trunk was impermissible under article I, section 7 of our state constitution based on the conclusory assertion that *Houser* was decided on state constitutional grounds. The starting and ending point of the majority's analysis on this issue is the following assertion: "The holding in *Houser* centered on the privacy interests of the individual; accordingly, *Houser* is an article I, section 7 case." Majority at 768.

Although inartfully stated, the majority appears to suggest that *Houser* was resolved on the "private affairs" concerns of article I, section 7. Unlike the federal "reasonable expectation of privacy" inquiry, the state constitutional inquiry focuses on whether the State has unreasonably intruded into a person's "private affairs." *State v. Myrick,* 102 Wn.2d 506, 510, 688 P.2d 151 (1984). In other contexts, this court has construed the state constitution to provide broader protection than the federal constitution because of the unique protection of a person's "private affairs" under article I, section 7. *E.g., State v. Young,* 123 Wn.2d 173, 181, 867 P.2d 593 (1994); *State v. Boland,* 115 Wn.2d 571, 577-78, 800 P.2d 1112 (1990). However, unlike *Young, Boland,* or any of the other article I, section 7 cases cited by the majority,[12] *Houser* did not depart from federal precedent based on textual differences between the state and federal constitutions. Instead, *Houser* simply observed in the introduction of the opinion that the Fourth Amendment and article I, section 7 define the scope of permissible warrantless searches. *Houser,* 95 Wn.2d at 148. Despite this passing reference to the state constitution, the court confined its analysis solely to federal precedent and state Fourth Amendment cases in holding that the inventory search at issue was unreasonable.[13] This is not surprising given that the court itself characterized the inventory

---

[12]Majority at 768 (citing *State v. Myrick,* 102 Wn.2d 506, 510, 688 P.2d 151 (1984); *State v. Jackson,* 102 Wn.2d 432, 439, 688 P.2d 136 (1984); *State v. Chrisman,* 100 Wn.2d 814, 818, 676 P.2d 419 (1984); *State v. Ringer,* 100 Wn.2d 686, 690, 674 P.2d 1240 (1983), *overruled by State v. Stroud,* 106 Wn.2d 144, 150, 720 P.2d 436 (1986); *State v. White,* 97 Wn.2d 92, 108-09, 640 P.2d 1061 (1982); *State v. Simpson,* 95 Wn.2d 170, 177-78, 622 P.2d 1199 (1980)).

[13]*State v. Houser,* 95 Wn.2d 143, 153-56, 622 P.2d 1218 (1980) (citing *United States v. Chadwick,* 433 U.S. 1, 97 S. Ct. 2476, 53 L. Ed. 2d 538 (1977); *South Dakota v. Opperman,* 428 U.S. 364, 96 S. Ct. 3092, 49 L. Ed. 2d 1000 (1976); *Cady v. Dombrowski,* 413 U.S. 433, 93 S. Ct. 2523, 37 L. Ed. 2d 706 (1973); *United States v. Bloomfield,* 594 F.2d 1200 (8th Cir. 1979); *United States v. Edwards,* 577 F.2d 883 (5th Cir. 1978); *State v. Boster,* 217 Kan. 618, 539 P.2d 294 (1975), *overruled by State v. Fortune,* 236 Kan. 248, 256, 689 P.2d 1196 (1984); *State v. Jewell,* 338 So. 2d 633 (La. 1976); *State v. Gluck,* 83 Wn.2d 424, 518 P.2d 703 (1974); *State v. Montague,* 73 Wn.2d 381, 438 P.2d 571 (1968); *State v. Singleton,* 9 Wn. App. 327, 511 P.2d 1396 (1973)).

search issue as a "Fourth Amendment question." *Houser,* 95 Wn.2d at 156 n.4.

Even though *Houser* did not cite a single case decided on article I, section 7 grounds, the majority attempts to shoehorn *Houser* into our article I, section 7 jurisprudence based on the *Houser* court's weighing of "privacy interests." The majority asserts that "[b]y focusing on individual privacy interests, our analysis in *Houser* necessarily focused on the inquiry required by article I, section 7." Majority at 767. Yet, the majority has identified nothing unique here. Both the Fourth Amendment and article I, section 7 focus on the State's intrusion into individual privacy interests. Indeed, the *Houser* court weighed the individual privacy interest against the State's interest in protecting the property in the trunk because this was precisely the inquiry required by the court's reliance on *South Dakota v. Opperman,* 428 U.S. 364, 96 S. Ct. 3092, 49 L. E. 2d 1000 (1976)—a federal search and seizure case. As Justice Powell observed: "Against these [State] interests must be weighed the citizen's interest in the privacy of the contents of his automobile." *Opperman,* 428 U.S. at 379 (Powell, J., concurring). Consequently, *Houser*'s choice of language— "privacy interests"—is wholly consonant with the court's exclusive Fourth Amendment analysis.

The majority, thus, attempts to avoid the application of federal precedent with the following syllogism: (1) we have granted broader state constitutional protection because of the "private affairs" language of article I, section 7; (2) the *Houser* court focused on individual "privacy interests"; therefore, (3) *Houser* is an article I, section 7 case. The obvious flaw in this logic is the disjuncture of the predicate assumptions. The conclusion simply does not follow from the underlying premises. The majority is, therefore, without any support for the proposition that we have granted broader state constitutional protection in the context of automobile inventory searches.

## II

The Court of Appeals decision below correctly resolved

that the inventory search of White's car trunk was permissible under *Houser*'s Fourth Amendment analysis. The *Houser* court recognized the long-standing inventory exception to the warrant requirement when such a search is performed in good faith to secure the impounded property from loss and to protect the police against false claims of loss. *Houser*, 95 Wn.2d at 154. The court observed that the inventory exception is limited to protecting against substantial risks to property. *Houser*, 95 Wn.2d at 155. Because the court was convinced that property locked in the trunk of an automobile was not at substantial risk, the underlying rationale to perform a warrantless search did not exist. *Houser*, 95 Wn.2d at 155-56.

In the present case, the Court of Appeals correctly distinguished *Houser* based on the risk of loss to items in a trunk accessible only by key versus the risk of loss to items in a trunk accessible by merely pushing a button in the passenger compartment of the vehicle.

> The risk of theft or unfounded claims becomes substantial when a car's trunk can be opened from an easily-accessible area of the passenger compartment. Implicit in the justification for warrantless inventory searches of the passenger compartment, including its unlocked glove compartment, is the recognition that these are areas a would-be thief can easily get into. Logically, if a thief can get into the passenger compartment of a vehicle, he or she can get into the trunk just as easily if it can be opened with a release button located in that same passenger compartment. Because it is no great secret that some cars have trunk release levers in the glove compartment or by the driver's seat, the danger of theft of items left in the trunks of those cars is far greater than is the case if a car trunk can only be opened with a key.

*State v. White*, 83 Wn. App. 770, 779, 924 P.2d 55 (1996). As the Court of Appeals observed, the foregoing analysis is entirely consistent with *Opperman*, which focused on the accessibility of the inventoried area. *White*, 83 Wn. App. at 780 (citing *Opperman*, 428 U.S. at 376 n.10).

Moreover, this analysis is consistent with subsequent

Supreme Court precedent. In *Colorado v. Bertine*, 479 U.S. 367, 107 S. Ct. 738, 93 L. Ed. 2d 739 (1987), the defendant was arrested for driving under the influence of alcohol and his vehicle was impounded. In conducting an inventory search of the vehicle, an officer discovered controlled substances in closed containers he found in a closed backpack. The defendant moved to suppress the evidence, arguing that searching closed containers exceeded the permissible scope of a warrantless inventory search under the Fourth Amendment. The Court rejected this challenge, reiterating that inventory searches are reasonable when conducted pursuant to standardized procedures in order to secure property from loss or to protect the police from false claims of loss.

> In the present case, as in *Opperman* and *[Illinois v.] Lafayette[*, 462 U.S. 640, 103 S. Ct. 2605, 77 L. Ed. 2d 65 (1983)], there was no showing that the police, who were following standardized procedures, acted in bad faith or for the sole purpose of investigation. In addition, the governmental interests justifying the inventory searches in *Opperman* and *Lafeyette* are nearly the same as those which obtain here. In each case, the police were potentially responsible for the property taken into their custody. By securing the property, the police protected the property from unauthorized interference. Knowledge of the precise nature of the property helped guard against claims of theft, vandalism, or negligence.

*Bertine*, 479 U.S. at 372-73.

There is nothing in this case to suggest that the Bellingham police did anything other than search the easily accessible areas of White's car pursuant to a standardized inventory policy to inventory those items at risk of loss. The seized evidence should, therefore, be admissible.[14] I would affirm.

ALEXANDER, J. (dissenting) — Although I agree with the

---

[14]The court need not consider whether the police exceeded the scope of a permissible inventory search by opening White's unlocked tackle box because White has never raised this issue. RAP 2.5(a), 13.7(b). Moreover, White concedes that under *Bertine* and *Opperman*, police may search closed containers discovered during an inventory search. Br. of Resp't at 21-22.

majority that *State v. Houser*, 95 Wn.2d 143, 622 P.2d 1218 (1980), was grounded in article I, section 7 of the Washington Constitution, and thus disagree with the Chief Justice in her assessment of the case as one based solely upon the Fourth Amendment, I concur with the Chief Justice in the result that she would have us reach. While I am satisfied that the contents of a locked automobile trunk are protected by article I, section 7 from the prying eyes of the police during a vehicle inventory search such as the one here, in my view the defendant's car trunk could not be considered locked under *Houser* because it could be opened merely by pressing a release button in the passenger compartment to which the officers lawfully had access. This "trunk release button was . . . in the unlocked glove box," Majority op. at 765, and gaining access to the trunk by pressing this button was no different than gaining access to the unlocked glove compartment itself by pressing a button. If the release button for the trunk had been shielded by a locked glove compartment, or was itself independently secured by a lock, then it would have been protected by *Houser* and a different result would be justified.

 I would affirm the Court of Appeals.