[No. 40634-9-II.    Division Two.    January 26, 2012.]

THE STATE OF WASHINGTON, *Respondent*, v. LARRY DEAN TYLER, *Appellant*.

*James L. Reese III*, for appellant.

*Scott W. Rosekrans, Prosecuting Attorney*, and *Thomas A. Brotherton, Deputy*, for respondent.

¶1  JOHANSON, J. — Larry D. Tyler appeals his convictions following a bench trial for unlawful possession of a controlled substance and third degree driving with a suspended license. He alleges the trial court erred in denying his motion to suppress evidence seized during an inventory search. He contends the inventory search was a mere pretext for an evidentiary search and that an inventory search cannot be conducted without consent. Tyler also argues that the trial court erred in denying his motion to reopen the suppression hearing and that substantial evidence does not support the trial court's findings of facts. We hold that consent was not required, the evidence seized was the product of a lawful inventory search, the trial court

properly exercised its discretion, and substantial evidence supports its findings. Discerning no errors, we affirm.

## FACTS

¶2 On a narrow and very busy portion of the highway, about a quarter mile before crossing the Hood Canal Bridge, Jefferson County Deputy Sheriff Brett Anglin stopped Tyler's car for speeding. As Deputy Anglin approached the car, he noticed that Tyler's passenger was trying to hide what looked like an alcohol container between his legs. Upon contact by Deputy Anglin, Tyler identified himself and stated he had a suspended license. Deputy Anglin confirmed Tyler's suspended license, arrested him, and placed him in the patrol car.

¶3 Deputy Anglin asked Tyler for consent to search the car; Tyler refused. After learning that the registered owner of the car was incarcerated, Deputy Anglin suggested that Tyler's passenger[1] use Tyler's cell phone to find a driver who could move the car. But despite making several calls, the effort was unsuccessful. Because of the car's unsafe location and the lack of a driver, Deputy Anglin called a towing company to impound the car. Deputy Anglin also inventoried the car based on the sheriff's office's impound policy and standard practice. The car contained expensive, unsecured stereo equipment. Near these amplifiers, Deputy Anglin saw a clear baggie containing white powder, later identified as methamphetamine.[2]

¶4 The State charged Tyler with unlawful possession of a controlled substance, methamphetamine, contrary to RCW

---

[1] Tyler's passenger, who is not a party to this appeal, could not drive the car because of his suspended license and outstanding warrants.

[2] Deputy Anglin also found a small blue metal container that he opened. It contained a substance later identified as heroin, but because the State did not charge Tyler based on his possession of this heroin, we do not address it or consider it in our analysis.

69.50.4013(1); use of drug paraphernalia contrary to RCW 69.50.412(1); and third degree driving with a suspended license contrary to former RCW 46.20.342(1)(c) (2008). Tyler moved to suppress the evidence seized from the car, arguing that the inventory search was a pretext for an evidentiary search and also that our Supreme Court has stated that police must obtain consent before conducting an inventory search. In a memorandum opinion, the trial court found that the inventory search was not a pretext for an evidentiary search and denied the motion. The same memorandum opinion erroneously listed Tyler's arrest date as February 11, 2009, instead of November 12, 2009.

¶5 Tyler then moved for reconsideration, arguing, "The issue is not whether the impound was reasonable (because it was), but whether, in light of Mr. Tyler's request that the vehicle not be searched, Deputy Anglin can do it anyway." Clerk's Papers (CP) at 32. Shortly after filing his motion for reconsideration, Tyler filed a motion to reopen the suppression hearing based on an e-mail that Deputy Anglin wrote to his supervisors more than six months before Tyler's arrest. In that e-mail, Deputy Anglin asserted that an additional K-9 officer would benefit the department and he attempted to persuade his supervisors to send him to K-9 training. But, the e-mail begins by discussing the United States Supreme Court's ruling in *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009). Tyler argued that language from Deputy Anglin's e-mail showed that Deputy Anglin was predisposed to perform an evidentiary search without cause under the pretext of an inventory search exception and also showed a possible conspiracy to deprive citizens of their constitutional rights.

¶6 The trial court denied both motions, ruling that Tyler's concession that Deputy Anglin reasonably impounded the vehicle was "dispositive in this matter." CP at 40. In its memorandum opinion, the trial court ruled that if the vehicle impound was reasonable, a deputy has no alternative but to perform an inventory search. After con-

sidering the stipulated police reports, the trial court found Tyler guilty of unlawful possession of methamphetamine and third degree driving with a suspended license and not guilty of use of drug paraphernalia. Tyler appeals.

## ANALYSIS

### I. MOTION TO SUPPRESS

¶7 Tyler argues that the evidence found during Deputy Anglin's inventory search should be suppressed because that search was a pretext for an evidentiary search and because Tyler did not give consent to the search. When reviewing a denial of a CrR 3.6 motion to suppress, we look for substantial evidence in the record to support the trial court's findings of fact. *State v. Mendez*, 137 Wn.2d 208, 214, 970 P.2d 722 (1999), *overruled on other grounds by Brendlin v. California*, 551 U.S. 249, 127 S. Ct. 2400, 168 L. Ed. 2d 132 (2007). We review the trial court's conclusions of law de novo. *Mendez*, 137 Wn.2d at 214.

¶8 Article I, section 7 of our constitution states, "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." A valid warrant, subject to a few jealously guarded exceptions, establishes the requisite " 'authority of law.' " *State v. Afana*, 169 Wn.2d 169, 176-77, 233 P.3d 879 (2010) (quoting WASH. CONST. art. I, § 7). One such exception to the warrant requirement is an inventory search accompanying lawful vehicle impound. *State v. White*, 135 Wn.2d 761, 769-70, 958 P.2d 982 (1998); *State v. Ladson*, 138 Wn.2d 343, 349, 979 P.2d 833 (1999). The State always has the burden to establish that an exception applies. *Afana*, 169 Wn.2d at 177.

¶9 When determining whether the fruits of an inventory search following a vehicle impoundment are admissible evidence of a crime, our first question is whether the State can show reasonable cause for the impoundment. *State v. Houser*, 95 Wn.2d 143, 148, 622 P.2d 1218 (1980).

Determining the validity of an impoundment is imperative when deciding whether evidence discovered during an inventory search is admissible in a criminal case. *Potter v. Wash. State Patrol*, 165 Wn.2d 67, 83, 196 P.3d 691 (2008).

¶10 In this case, Tyler concedes that Deputy Anglin lawfully impounded[3] the vehicle Tyler was driving. Deputy Anglin arrested Tyler for driving with license suspended, leaving the vehicle parked on "the busiest part" of the road "less than a food [sic] away from the fog line," a quarter of a mile before the Hood Canal Bridge. Report of Proceedings at 13. Deputy Anglin not only permitted but, in fact, suggested that Tyler's passenger use Tyler's cell phone to attempt to locate a driver. Our analysis therefore relies on the undisputed validity of Deputy Anglin's lawful impound of the vehicle.

¶11 It is well settled that police officers may conduct a "good faith" inventory search following a "lawful impoundment" without first obtaining a search warrant. *State v. Bales*, 15 Wn. App. 834, 835, 552 P.2d 688 (1976), *review denied*, 89 Wn.2d 1003 (1977); *State v. Montague*, 73 Wn.2d 381, 385, 438 P.2d 571 (1968). Unlike a probable cause search, where the purpose is to discover evidence of a crime, the purpose of the inventory search is to perform an administrative or caretaking function. *State v. Dugas*, 109 Wn. App. 592, 597, 36 P.3d 577 (2001). The principal purposes of an inventory search are (1) to protect the vehicle owner's property, (2) to protect the police against false claims of theft by the owner, and (3) to protect the

---

[3] In Washington, "[a] vehicle may lawfully be impounded if authorized by statute or ordinance. 'In the absence of statute or ordinance, there must be reasonable cause for the impoundment.' " *State v. Bales*, 15 Wn. App. 834, 835, 552 P.2d 688 (1976) (quoting *State v. Singleton*, 9 Wn. App. 327, 331, 511 P.2d 1396 (1973)), *review denied*, 89 Wn.2d 1003 (1977). RCW 46.55.113(1) expressly authorizes law enforcement "to impound a vehicle when . . . the driver is arrested for [driving with license suspended]." *Potter*, 165 Wn.2d at 73. Additionally, the statute provides that an officer may "take custody of a vehicle, at his or her discretion" if it is "unattended upon a highway where the vehicle constitutes an obstruction to traffic or jeopardizes public safety." RCW 46.55.113(2)(b).

police from potential danger.[4] *White*, 135 Wn.2d at 769-70 (citing *Houser*, 95 Wn.2d at 154). Our Supreme Court has recognized that an additional "valid and important" purpose for the inventory search is to protect the public from vandals who might find a firearm or contraband drugs. *Houser*, 95 Wn.2d at 154 n.2 (citing *South Dakota v. Opperman*, 428 U.S. 364, 369, 376 n.10, 96 S. Ct. 3092, 49 L. Ed. 2d 1000 (1976)).

¶12 But the *Houser* court noted that such purposes will not serve to justify an inventory search in each and every case. *Houser*, 95 Wn.2d at 154 n.2. Accordingly, the *Houser* court limited the scope of the inventory search to protect against only "substantial risks to property in the vehicle" and invalidated the inventory search of a locked trunk because no reason existed to believe items in the trunk presented a "great danger of theft." *Houser*, 95 Wn.2d at 155.

¶13 Here, Deputy Anglin and a backup officer[5] cataloged two expensive, unsecured stereo amplifiers, located in the interior of the car. As a consequence of Deputy Anglin's routine and lawful cataloging, Deputy Anglin saw, in plain view, a clear baggie containing what appeared to be methamphetamine. Deputy Anglin lawfully seized this bag in plain view. *State v. Gibson*, 152 Wn. App. 945, 954, 219 P.3d 964 (2009) ("officer may seize evidence without a warrant if he has made a justifiable intrusion and inadvertently sights contraband in plain view").

¶14 Washington courts "regularly" uphold inventory searches following a lawful impoundment provided the search is not a pretext for a general exploratory search and

---

[4] Although *White* includes this third purpose while citing *Houser*, 95 Wn.2d at 154 n.2, as further discussed above, the *Houser* court speculated that protecting the police and public from the danger of potential contraband in a vehicle would generally not justify an inventory search.

[5] Tyler argues that the fact that two officers searched shows lack of good faith. Although Tyler offers authority that generally discusses good faith, he fails to support this argument or otherwise persuade us that the number of officers inventorying and recording information is relevant. RAP 10.3(a)(6).

provided police conducted these searches according to "standardized police procedures which do not give excessive discretion to the police officers." *State v. Smith*, 76 Wn. App. 9, 14, 882 P.2d 190 (1994), *review denied*, 126 Wn.2d 1003 (1995). The "general" inventory search rule provides:

> When . . . the facts indicate a lawful arrest, followed by an inventory of the contents of the automobile preparatory to or following the impoundment of the car, and there is found to be reasonable and proper justification for such impoundment, and where the search is not made as a general exploratory search for the purpose of finding evidence of a crime but is made for the justifiable purpose of finding, listing, and securing from loss, during the arrested person's detention, property belonging to him, then we have no hesitancy in declaring such inventory reasonable and lawful, and evidence of crime found will not be suppressed.

*Montague*, 73 Wn.2d at 385; *White*, 135 Wn.2d at 770 ("The general rule in Washington regarding the admissibility of evidence discovered during an inventory search accompanying the impoundment of a vehicle was set forth in *State v. Montague*.").

¶15 Although the general rule does not mention consent, Tyler claims that police must first obtain consent before conducting an inventory search. Tyler relies on dicta from *State v. Williams*, 102 Wn.2d 733, 743, 689 P.2d 1065 (1984).[6] In *Williams*, the court considered whether evidence found in petitioner's car was the product of an illegal search incident to arrest or, alternatively, a routine inventory search. *Williams*, 102 Wn.2d at 735-36. Regarding the inventory search, the *Williams* court rejected the argument that the search was a valid routine inventory search because the police officer's decision to *impound* the vehicle

---

[6] Based on *Williams*, the federal Court of Appeals has stated, "Under Washington law, State troopers may not conduct a routine inventory search following lawful impoundment of a vehicle without first asking the owner, if present, if he will consent to the search." *United States v. Wanless*, 882 F.2d 1459, 1463 (9th Cir. 1989). The *Wanless* dissent notes, "[T]he majority relies exclusively on dictum in *Williams* to support its position." *Wanless*, 882 F.2d at 1468 (Wright, J., dissenting).

did not satisfy the requisite criteria. *Williams*, 102 Wn.2d at 743. After resting its determination on this basis, the *Williams* court commented on consent:

> However, even if impoundment had been authorized, it is doubtful that the police could have conducted a routine inventory search without asking petitioner if he wanted one done. The purpose of an inventory search is to protect the police from lawsuits arising from mishandling of personal property of a defendant. Clearly, a defendant may reject this protection, preferring to take the chance that no loss will occur. *See generally United States v. Lyons*, [227 U.S. App. D.C. 284, ]706 F.2d 321, 335 n.23 (D.C. Cir. 1983).

*Williams*, 102 Wn.2d at 743.[7]

¶16 The United States Supreme Court reasoned that police are not required to obtain the owner's consent to inventory a properly impounded car because valid purposes of the inventory search include alerting officers of potential danger (1) to themselves or (2) to the public from items inside the car. *Opperman*, 428 U.S. at 376 n.10. Where the court recognizes the purposes of protecting police officers

---

[7] Our Supreme Court also commented, in dicta, on the inventory consent issue. In *White*, the issue was the *scope* of the search rather than the *validity* of the search. *White*, 135 Wn.2d at 770. In *White*, the police searched a trunk based on long-standing police department procedures and the presence of an interior release latch increasing the trunk's accessibility to a " 'would-be thief.' " *White*, 135 Wn.2d at 771. Our Supreme Court held that "searches of closed and locked trunks are limited to those few situations when manifest necessity exists." *White*, 135 Wn.2d at 772. After determining that the possibility of theft did not rise to manifest necessity, the *White* court offered its thoughts on consent:

> Further, the record does not indicate White was ever asked whether he would consent to an inventory search, and the State makes no claim that he was. White was never given the opportunity to reject the protection available and, thus, the search is also suspect under *State v. Williams*, 102 Wn.2d 733, 689 P.2d 1065 (1984). In *Williams*, the court held police may not conduct a routine inventory search following the lawful impoundment of a vehicle without asking the owner, if present, if he or she will consent to the search. *Williams*, 102 Wn.2d at 743; *see also United States v. Wanless*, 882 F.2d 1459, 1463 (9th Cir. 1989) (decided on state grounds); Robert F. Utter, *Survey of Washington Search and Seizure Law: 1988 Update*, 11 U. PUGET SOUND L. REV. 411, 578 (1988). In Washington, an individual is free to reject the protection that an inventory search provides and take the chance that no loss will occur.

*White*, 135 Wn.2d at 771 n.11.

(from more than lawsuit based on property loss) and protecting the public, the car owner cannot waive an inventory after the proper impoundment of the car.[8]

¶17 Tyler does not challenge the lawfulness of his arrest; additionally he concedes that Deputy Anglin reasonably impounded his friend's car. Tyler did not own the car, which had expensive, unsecured stereo equipment in the back seat. Deputy Anglin searched the interior of the car in order to find, list, and secure the property from loss during Tyler's detention. *See Montague*, 73 Wn.2d at 385. In cataloging the stereo equipment, Deputy Anglin had plain view of the methamphetamine. Under these facts, we decline to hold that a nonowner's lack of consent invalidated an otherwise valid inventory search. *See Williams*, 102 Wn.2d at 747-48 (Dimmick, J., dissenting).

¶18 We agree with the trial court that it would be inappropriate for Deputy Anglin to impound the car without inventorying the interior contents. Substantial evidence supports the trial court's finding of fact that the search was reasonable under all the circumstances and not a pretext for an evidentiary search. Therefore, we hold that the trial court did not err when it denied Tyler's motion to suppress evidence.[9] *Mendez*, 137 Wn.2d at 214. We affirm Tyler's convictions.

## II. Motion To Reopen

¶19 Tyler also argues that the trial court abused its discretion in denying his motion to reopen the suppression

---

[8] *See United States v. Edwards*, 577 F.2d 883, 894 n.23 (5th Cir.) (en banc) (per curiam) (alternative holding), *cert. denied*, 439 U.S. 968 (1978); *People v. Clark*, 65 Ill. 2d 169, 357 N.E.2d 798, 800, 2 Ill. Dec. 578 (1976), *cert. denied*, 431 U.S. 918 (1977). *But see United States v. Wilson*, 636 F.2d 1161, 1165 (8th Cir. 1980) (alternative holding); *State v. Killcrease*, 379 So. 2d 737, 739 (La. 1980); *State v. Mangold*, 82 N.J. 575, 586, 414 A.2d 1312 (1980); *State v. Goff*, 166 W. Va. 47, 272 S.E.2d 457, 460 (1980) (dicta).

[9] Tyler similarly argues that the trial court erred in denying his motion to reconsider its denial of his motion to suppress evidence. This argument fails for the reasons stated above.

hearing. He argues that Deputy Anglin's e-mail implies that Deputy Anglin might use an inventory search for evidentiary purposes under certain conditions.[10] He further argues the e-mail is possible evidence of a conspiracy to deprive citizens of their constitutional rights. "A motion to reopen a proceeding for the purpose of introducing additional evidence is addressed to the sound discretion of the trial court. The manner of exercising that discretion will not be disturbed on appeal absent manifest abuse. Abuse of discretion is discretion exercised on untenable grounds for untenable reasons." *State v. Mora Sanchez*, 60 Wn. App. 687, 696, 806 P.2d 782 (1991) (citation omitted).

¶20 Here, the trial court described Deputy Anglin's e-mail as "concerning" but nevertheless denied the motion to reopen the suppression hearing for the following two reasons:

> [T]o the extent that it could be construed as recommending vehicle impounds in every case where the driver is taken into custody, it is not a basis for reopening the instant case. First, the Court has found, and the Defendant admits, that the impound in this case was reasonable, and the finding was supported by substantial evidence as the Court has previously noted, and to do an impound without doing an inventory would be inappropriate, if not foolish. Second, this arrest, impound and inventory took place prior to the publication of the <u>Gant</u> decision, so the ruling in <u>Gant</u> could not have been the motivation for this inventory search.

CP at 41.

---

[10] Although we agree with the trial court that the first paragraph is concerning, we note that it appears less troubling when viewed in context. The first paragraph reads:

> This unfortunate ruling [*Gant*, 556 U.S. 332] hinders our ability to continue the efforts that have been enforce [sic] for some time. The obvious way to circumvent this is impounding the vehicle and performing an inventory search. The problem with this is that we must afford the person the chance to contact someone else and determine if it is safely off of the roadway or not. It also obviously limits what we can search as well. The other way around this case and that is the use of a K-9.

CP at 36.

¶21 The State correctly concedes that the trial court's second reason is untenable because the impound and inventory took place *after* the Supreme Court published *Gant*; however, the State nonetheless asserts that the mistake has no legal effect and the court's first stated reason to deny the motion to reopen does not constitute an abuse of discretion. We agree with the State. We note that contrary to Tyler's argument, Deputy Anglin's e-mail is not designed to circumvent court decisions but to persuade his supervisors to send him to K-9 training. We also note that Deputy Anglin's position within the department does not give him authority to shape his department's procedures. Nor is there evidence to suggest that he has particular influence with his supervisors or that they altered police procedures based on the e-mail sent six months prior to Tyler's arrest. Finally, we note that even if the letter was evidence that the officer was predisposed to unnecessary impound, here it is agreed the impound was necessary. These circumstances do not support Tyler's argument of a possible conspiracy to deprive citizens of their constitutional rights.

¶22 Tyler concedes that the impoundment was reasonable. In addition, the dangerous location of the car, the unavailability of the owner or other lawful driver, and the presence of expensive and unsecured stereo equipment in the interior of the car establish a nonpretextual basis for the inventory search. We hold that the trial court did not deny the motion to reopen on "untenable grounds for untenable reasons," nor did it exhibit manifest abuse of discretion by denying Tyler's motion to reopen the suppression hearing because the impoundment and resulting inventory search were valid and Deputy Anglin's e-mail does not alter the facts supporting those findings. *Sanchez*, 60 Wn. App. at 696.

### III. SUFFICIENT EVIDENCE

¶23 Tyler argues that substantial evidence does not support the trial court's findings of facts in its memoran-

dum opinion denying his motion to suppress evidence. Tyler specifically points to these errors: (1) an erroneous date of Tyler's arrest and (2) the erroneous statement that Tyler and his passenger "both were engaged in furtive movements." CP at 22.

¶24 An error by the trial court that does not result in prejudice to the defendant is not grounds for reversal. *State v. Bourgeois*, 133 Wn.2d 389, 403, 945 P.2d 1120 (1997). Nonconstitutional error is not prejudicial unless, within reasonable probabilities, the error materially affected the trial's outcome. *Bourgeois*, 133 Wn.2d at 403. To the extent that the trial court cited the incorrect date when Deputy Anglin stopped Tyler, this error has no legal effect because it had no bearing on the ultimate reason for why the court denied Tyler's suppression motion. Similarly, the trial court's error stating that Tyler acted furtively has no bearing on its conclusions.

¶25 Tyler also argues that because portions of Tyler's testimony conflict with Deputy Anglin's testimony, the trial court's findings lack sufficient evidence. But this argument relates to the trial court's credibility determinations. We defer to the trial court, which " 'had the opportunity to evaluate the witnesses' demeanor . . . . We will review the trial court's inferences and conclusions, but not its findings as to credibility or the weight to be given evidence.' " *State v. Swan*, 114 Wn.2d 613, 666, 790 P.2d 610 (1990) (quoting *In re Pers. Restraint of Bugai*, 35 Wn. App. 761, 765, 669 P.2d 903 (1983)). Here, because we defer to the trial court's credibility determination and the weight it accords the evidence, Tyler's argument fails.

¶26 In conclusion, we hold that Deputy Anglin was not required to gain Tyler's consent before performing an inventory search, and the trial court properly exercised its discretion when it denied Tyler's motions because substantial evidence supports the trial court's findings. We also

hold that the factual errors in the memorandum opinion were harmless.

¶27 We affirm.

VAN DEREN, J., concurs.

¶28 ARMSTRONG, J. (dissenting) — The trial court denied Tyler's motion to reopen the suppression hearing in part because it erroneously believed this inventory search occurred before *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009). Because of this factual error, the trial court abused its discretion in denying Tyler's motion to reopen.

¶29 We review a trial court's decision to deny reopening a suppression hearing for an abuse of discretion. A trial court abuses its discretion when its decision is based on untenable grounds. *State v. Johnson*, 90 Wn. App. 54, 69, 950 P.2d 981 (1998) (citing *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)). A trial court's decision based on facts not supported by the record is based on untenable grounds. *State v. Rundquist*, 79 Wn. App. 786, 793, 905 P.2d 922 (1995).

¶30 In denying Tyler's motion to reopen, the trial court reasoned:

First, the Court has found, and the Defendant admits, that the impound in this case was reasonable, and that finding was supported by substantial evidence as the Court has previously noted, and to do an impound without doing an inventory would be inappropriate, if not foolish. Second, this arrest, impound and inventory took place prior to the publication of the Gant decision, so the ruling in Gant could not have been the motivation for this inventory search.

Clerk's Papers (CP) at 41.

¶31 The State concedes that the second finding is incorrect. The Supreme Court published *Gant* on April 21, 2009,

more than six months before the arrest in this case. *Gant*, 556 U.S. 332. Deputy Anglin's e-mail was sent on April 23, 2009, two days after the *Gant* decision. The deputy arrested Tyler on November 12, 2009, more than six months after *Gant.* Moreover, the trial court's comment that Tyler "admitted that the impound . . . was reasonable" is questionable. Tyler conceded that the impound was reasonable in his original motion and, arguably, again in his motion to reconsider. But Tyler did not learn of Deputy Anglin's e-mail until after he moved for the trial court to reconsider. And Tyler did not renew his concession after that or in his briefing to us.

¶32 Deputy Anglin wrote in his e-mail that *Gant*

> hinders our ability to continue the efforts that have been enforce [sic] for some time. The obvious way to circumvent this is impounding the vehicle and performing an inventory search. The problem with this is that we must afford the person the chance to contact someone else and determine if [the car] is safely off of the roadway or not. It also obviously limits what we can search as well.

CP at 36.

¶33 The majority seeks to temper the sting of this by noting that the deputy wrote the message only to persuade his supervisors to send him to K-9 school, the deputy had no supervisory authority in the department, and there is no evidence he influenced his supervisors to alter police procedures. Majority at 215. But the question is not whether the department changed its procedures because of the e-mail, but whether Deputy Anglin utilized his "way-around-*Gant*" in post-*Gant* traffic stops and, in particular, whether he did so with Tyler. Moreover, that Deputy Anglin makes the statements in a request for K-9 training sheds no light on whether he intends to circumvent *Gant* with impound inventories. Nothing in this purpose suggests that Deputy Anglin was somehow not serious about his "way-around-*Gant*" proposal.

¶34 To be valid, the State must prove that a warrantless inventory search was "conducted in good faith and not as a pretext for an investigatory search." *State v. Houser*, 95 Wn.2d 143, 155, 622 P.2d 1218 (1980). And to the extent the "good faith" issue turns on disputed facts, only the trial court can resolve them by weighing the evidence and making findings of fact. *See, e.g., State v. Sadler*, 147 Wn. App. 97, 123, 193 P.3d 1108 (2008).

¶35 Here, Tyler testified at the suppression hearing that as soon as he exited the car, Deputy Anglin asked if he could search it. Tyler said he could not. Deputy Anglin then "went and looked in the car." Report of Proceedings (RP) at 32. Tyler also denied that the car was within a foot of the fog line and denied that Deputy Anglin ever mentioned impounding and inventorying the car.

¶36 Deputy Anglin testified that he asked Tyler for permission to search because the passenger had acted suspiciously in trying to hide a "beer can" and Tyler appeared to be nervous. RP at 15, 17. Deputy Anglin learned that the "beer can" was actually a can of Sparks[11] when he got up to the vehicle, well before he sought permission to search. RP at 15. More telling is the deputy's explanation of what he believed the scope of a consent search to be; he testified it would permit him to "search different areas of the vehicle which would include the trunk, locked containers if he allows us to, cell phones, under the hood." RP at 13. Deputy Anglin's request for permission to search signals his early interest in conducting a broad search of the vehicle.

¶37 In addition, Deputy Anglin testified that he inventoried the car and found a little blue tin in the vehicle, the size of an Altoid container. The deputy discussed the details of the container and further stated that "honestly, I do not know what they're used for other than to hold jewelry or illicit drugs." RP at 20. Deputy Anglin unscrewed the small

---

[11] Sparks is a malt beverage that contains alcohol.

blue container to look at the contents. Notably, here, Deputy Anglin did not know the Jefferson County Sheriff's Department's standard for inventory procedures and whether police are directed to search closed containers in the vehicle. *See Florida v. Wells*, 495 U.S. 1, 110 S. Ct. 1632, 109 L. Ed. 2d 1 (1990) (the lack of standardized procedures by police resulted in the exclusion of marijuana seized from a locked suitcase discovered by police while conducting an inventory search of a vehicle).

¶38 These circumstances together with the deputy's e-mail are more than sufficient to warrant a further hearing to determine whether something is constitutionally amiss with Deputy Anglin's "inventory" of Tyler's vehicle. I would remand for the trial court to reopen the suppression issue.

Review granted at 174 Wn.2d 1005 (2012).